## MANZER v. BARNES.

### No. 5882.

Court of Civil Appeals of Texas. Amarillo.
July 12, 1948.
Rehearing Denied Sept. 7, 1948.

W. F. Nix and R. A. De Fee, both of Amarillo, for appellant.

H. H. Cooper, of Amarillo, for appellee.

STOKES, Justice.

This suit was instituted by the appellee, J. D. Barnes, against the appellant, Martin R. Manzer, for damages alleged to have accrued to him on account of the failure of the appellant to comply with a parole contract under which appellant agreed to furnish certain parts and material and repair a truck belonging to the appellee. It appears that appellant owned and operated a garage and that he was engaged in the business of repairing trucks and automobiles. Appellee alleged, in substance, that he presented the truck to appellant and requested advice as to whether or not appellant could repair it and put it in good working order; that upon examining the truck appellant advised him he could and would be able to repair it and put it in first class condition; that he delivered the truck to appellant and appellant and his mechanics worked upon it for several days, delivered it back to appellee and represented to him that it was in good working order. He further alleged that he took the truck to his farm and made every reasonable effort to use it but that it would not operate with any appreciable degree of efficiency and that, in the condition in which it was delivered to him, he was unable to use it. He alleged that he paid appellant $669.65 to repair the truck and he prayed for actual damages in that amount.

Appellant answered by alleging, in substance, that appellee came to his place of business and informed appellant he had purchased the truck and did not know its condition but it was in need of repair and he desired appellant to examine it and make such repairs as might be necessary. He alleged that he agreed to take the truck apart, perform such labor as might be necessary to repair it and replace all such parts as might be worn out and useless, if such parts were available. He alleged the truck was a D–400 model of 1940 and that he told appellee the age of the truck, the

model and type of its construction were such that new parts for its repair were difficult to obtain but that he promised to obtain such parts as were obtainable and replace the worn parts.

Appellee testified in effect that, on Saturday, May 24, 1947, he went to appellant's garage and informed appellant he had purchased the truck and that it needed overhauling and new parts but that he did not know the extent to which repairs were needed. He said he asked appellant if he could overhaul the truck and put it in number one shape and appellant said he could. He said he told appellant that he wanted appellant to do the work and appellant requested him to bring the truck to the garage the following Monday and said he and his mechanic would take it apart and by the next day he would be able to inform appellee of what would be necessary in the way of new parts. He said that when he returned to the garage on Tuesday of the following week, appellant told him the truck would have to have new sleeves, pistons, valves, guides, springs and various other items and that he told appellant to procure them and also such other parts as might be necessary and install them in the truck so that it would be in first class shape to be used in his approaching harvest. The evidence showed that appellant procured numerous parts and that he and his mechanics installed them and a few days later the truck was delivered to appellee at which time he paid to appellant the itemized bill for the repairs and labor presented to him by appellant amounting to $669.65. It appears further that appellee took the truck to his farm and attempted to use it in harvesting his wheat but that it would not operate with any appreciable degree of efficiency and was of no practical service to appellee. Appellant did some other work on the truck after it was delivered to appellee but the parties finally got into a controversy concerning it and, instead of having additional work and repairs made on it, appellee discarded the old motor and had a new one installed.

Appellant's version of the contract was that he would procure from dealers in automobile parts such new parts as were obtainable and with them and such parts as he had in stock, he would replace the old parts and use the best efforts of which he was capable to repair the truck.

The case was submitted to a jury upon special issues, the first of which was, "Do you find * * * that plaintiff, J. D. Barnes, and defendant, Martin R. Manzer, * * * made and entered into a verbal contract * * * whereby the defendant agreed to repair the truck in question and put it in good working order." This special issue was answered in the affirmative. In answer to the second special issue the jury found that appellant failed to put the truck in good working order. There were other special issues submitted to and answered by the jury which we do not consider necessary to discuss. Upon the return of the verdict the court entered judgment in favor of appellee for actual damages in the sum of $669.65. Appellant requested the court to submit to the jury the following special issue: "Do you find * * * that plaintiff, J. D. Barnes, and defendant, Martin R. Manzer, * * * made and entered into a verbal contract and agreement whereby the defendant agreed to repair, in a workmanlike manner, the truck in question." The court refused to submit the requested special issue and such refusal is assigned as error.

■■ As we view the case it was one in which appellee sought actual damages for failure of appellant to perform the verbal contract in which he agreed to repair the truck. He alleged his actual damages to be $669.65, which was the charge made by appellant for the extra parts put into the truck and the labor performed thereon in doing so. There was no testimony concerning the measure of appellee's damages, other than proof of what he had paid appellant, nor any special issue submitted to the jury concerning the measure of the damages. The amount of damages seems to have been fixed by the court at the price paid by appellee for the repairs and labor and, in his brief, appellee justifies the court in doing so upon the ground that his suit was one to recover the amount he had paid appellant because appellant had not performed his contract and placed the truck in good working order. While the special issue requested by appellant might not have been as accurate as it could have been,

we think it, or a similar one, should have been submitted to the jury. In their testimony the parties differed widely as to the nature of the contract. Appellee contended that appellant agreed to place the truck "in good working order," equivalent, in practical effect, to a warranty. This was denied by appellant. He contended he agreed to procure such parts as were available and exercise his best efforts to repair the truck. By the special issue submitted, the court obtained a finding of the jury upon appellee's version of the contract but no special issue was submitted upon appellant's version of it. As said by this court in Dallas Railway & Terminal Co. v. Stewart, Tex. Civ.App., 128 S.W.2d 443, 444, "It has now become an elementary rule that a defendant has the right to an affirmative submission of any fact or group of facts relied upon as a defense." Appellant both pleaded and testified that he only agreed with appellee that he would use his best efforts to repair the truck. This is quite a different contract from one in which he agreed to place the truck in good working order, and was presented by him as a defense to appellee's cause of action. Thurman v. Chandler, 125 Tex. 34, 81 S.W.2d 489; Montrief & Montrief v. Bragg, Tex.Com. App., 2 S.W.2d 276; Missouri, K. & T. Ry. Co. v. McGlamory, 89 Tex. 635, 35 S.W. 1058; Armour & Co. v. Morgan, 108 Tex. 417, 194 S.W. 942; Gammage v. Gamer Co., Tex.Com.App., 213 S.W. 930.

In our opinion the court erred in refusing to submit to the jury the requested special issue and for such error, the case will have to be reversed.

In view of another trial we think it pertinent to discuss some of the issues revealed by the record. The court seems to have concluded that the contract between the parties was consummated on Saturday, May 24, 1947. In our opinion, that conversation consisted merely of negotiations for a contract. Appellee informed appellant he had purchased the truck and that it needed repairs. He asked appellant if he could do the work and put the truck in A-1 condition and appellant replied that he could. Certainly no contract was consummated up to that time. Appellee indicated he wanted appellant to do the work and appellant then told him to bring the truck to his shop the following Monday; that he would take it apart and, by Tuesday, he would be able to inform appellee of what was needed. The minds of the parties did not come together on any portion of a contract during the Saturday conversation. Neither of them knew what would be necessary to repair the truck. That matter was deferred until the following Tuesday when appellee returned to appellant's shop and appellant then informed him what would be necessary. He specified numerous parts that would have to be procured and placed in the truck. Appellee told him to procure the parts mentioned and any others that were necessary. He also told him he wanted the truck to be placed in A-1 condition. That degree of condition implies the highest quality and had reference to the truck in its then used and worn-out condition. There was no testimony by any witness that appellant agreed or contracted to place the truck in A-1 condition nor to repair it so that it would be of the highest quality nor that he would repair it so that it would be in good working order. Of course, by maintaining his shop, holding himself out as a mechanic and accepting the employment, appellant impliedly represented that he and his mechanics possessed reasonable skill and ability to do the work necessary to repair the truck, and when he told appellee on Saturday that he could do the work and make the repairs, he did no more than that. We think the contract was the result of both of the conversations, that is, the one on Saturday and the one had on the following Tuesday, the substance and effect of which were that appellant would procure such parts as were available and necessary, replace the old parts with them and repair the truck in a skillful and workmanlike manner. By the negotiations and agreements consummated on Tuesday, the parties showed clearly what they understood the contract to be and the rule of law is well established that the acts and conduct of the parties are convincing, if not conclusive, of what they intended the contract to mean and are explanatory of what their intentions were in making it. Stanley v. Sumrell, Tex.Civ.

App., 163 S.W. 697. The judgment entered by the court indicates that the court considered the proper measure of appellee's damages to be the amount of money he paid appellant for the work and material expended and used upon the truck. Appellee attempts to justify the court in this conclusion by a counter proposition in which he asserts that his cause of action was not one for damages but was a suit to recover the consideration paid under the terms of the contract which appellant failed to perform. In support of this contention he cites us to the case of Thomas W. Blake Lumber Co. of La Ward v. Whitfield, Tex. Civ.App., 45 S.W.2d 753 and other cases of like import. Those were cases involving the right to rescind contracts. The question of rescission was not an issue in the instant case and could not have been because it is obvious that the parties could not be restored to the status quo. Many new parts and pieces of machinery were procured by appellant and others taken from his own stock and placed in the truck. The old motor was not accounted for but it had been discarded and replaced by a new one. There is no claim that the truck could not have been repaired and placed in the condition contemplated by appellant and appellee when the contract was made. The measure of damages for breach of such a contract is whatever might be required to compensate the injured party, that is, put him in as good position, as nearly as it may reasonably be done, as he would have been if the contract had been carried out as originally contemplated. McArthur v. Day, Tex.Civ.App., 19 S.W.2d 134; Jones v. George, 61 Tex. 345, 48 Am.Rep. 280; Andrus v. Hornsby, Tex.Civ.App., 238 S.W. 314. Moreover, it is held that, in order to recover for breach of such a contract, the party claiming damages is required to furnish testimony from which the amount of his loss or injury can be determined by the court or jury with reasonable accuracy. Thomas v. Basden & Carrell, Tex.Civ.App., 4 S.W.2d 336.

If appellant had contracted and agreed with appellee that he would repair the truck and place it in good working condition in consideration of a certain sum of money, there would have been an implied warranty that, when the work was completed, the truck would be in the condition specified and the measure of appellee's damages would have been the difference between what he had paid the appellant and the amount necessary to complete the work and put the truck in the condition in which appellant had agreed it would be after he repaired it. There was no testimony to the effect that appellant agreed to furnish the labor and material necessary to repair the truck and place it in good working condition for a certain sum of money. All of the testimony showed appellee was charged for the respective items of labor performed and the material or parts placed in the truck and no complaint is made that any of such charges were unreasonable. If the contract was in accordance with appellant's version, that is, that he would provide such material and parts as were necessary and available and perform such labor as was necessary to repair the truck and use the best skill and judgment of which he was capable, and appellant failed to perform the labor in a skillful and workmanlike manner, or placed defective, faulty or unnecessary parts in the truck, then appellee's measure of damages would be the amount that would be necessary to correct any faulty labor, replace faulty parts and the value of such unnecessary parts as were put in the truck. This would include material or parts, if any, for which appellee paid appellant that were not used or placed in the truck. Manifestly he would not be entitled to a judgment against appellant for any additional labor and material that might be necessary to complete the repair of the truck when appellant had not charged him for anything except the labor performed and material supplied by him. In other words, as said by the Court of Civil Appeals in Roark v. General Motors Acceptance Corporation, 114 S.W.2d 611, 613, "It would seem to us to be the difference between what the owner paid for the repairs and the actual value of the repairs when made."

For the error pointed out, the judgment will be reversed and the cause remanded.