Waldemar **WINKLER**, Individually and dba Winkler Automotive Service, Appellant,

v.

**SAR MANUFACTURING COMPANY, INC.,**
Appellee.

No. 16257.

Court of Civil Appeals of Texas, Houston (1st Dist.).

March 14, 1974.

C. B. Stanley, Fred D. Jamail, Houston, for appellant.

Philip P. Mabry, Houston, for appellee.

EVANS, Justice.

In a non-jury trial, SAR Manufacturing Company, Inc., appellee herein, was awarded judgment in the amount of $1582.60 against appellant, Waldemar Winkler, for breach of contract and warranty in failure to properly overhaul and repair appellee's diesel truck engine. The trial court's findings and conclusions, following the allegations of plaintiff's petition, found that Winkler had entered into a contract with SAR Manufacturing to repair and restore the engine to operating condition and had guaranteed the engine's operating condition "under normal and reasonable usage." The court found that after the repair work had been completed and the truck had been returned to plaintiff, the engine had been used under normal and reasonable usages, but "broke down" and "ceased operating in a serviceable manner." Appellant requested additional and amended findings and excepted to the court's findings on the ground there was no evidence as to the nature of the defects in the engine after the final repairs; nor as to the cost of repairs needed to place the engine in the condition of repair guaranteed, nor as to the amount of damages suffered by reason of appellant's failure to make further repairs; nor

that such repairs rendered the engine wholly unsuitable for use; nor that appellee did not derive any benefit from such repairs. In eight points of error, appellant raises these same objections and asserts the trial court erred in rendering judgment against him.

The original Winkler Automotive Service invoice dated May 22, 1968, under the heading "Description of Work" recites:

"Remove cylinder head and oil pan. Check for water leak and low oil pressure. Remove engine and send out for repairs. Reinstall engine assembly. Replace hoses and clamps. Run rack. Run and check out pump pressure and injectors. Check battery cables and repair. $220.00."

Under the designation "Materials Used" appear the following:

| | | | |
|---|---|---|---|
| "One engine rebuilt. | | | |
| Replace pump kits. | | | |
| Grind shaft and rod bearings. | | | |
| Replace cam shaft and bearings. | | | |
| Replace cam gears. | | | |
| Replace cam followers. | | | |
| Replace block. | | | |
| Repair cracks in cylinder head. | | | |
| Test and magnaflux and resurface | | | |
| head. | | | $1,279.97 |
| One rebuilt water pump, net | | | 30.00 |
| 2 hoses | $7.60 | net | 5.70 |
| 1 fuel line | 1.60 | net | 1.20 |
| 15 quarts of oil | 7.00 | net | 5.25 |
| 3 hose clamps | 1.05 | net | .79 |
| | | Total | $1,322.91" |

Of the two amounts indicated above the sum of $220.00 was indicated as a labor charge and the balance as a charge for parts; after adding a State tax of $39.69, a total bill for $1,582.60 was submitted.

Winkler testified that when he removed the cylinder head and oil pans to check the engine he found that low oil pressure was caused by loose beams and rod bearings and that he also found that the head seams were cracked and were letting water into the crank shaft. He said he removed the engine assembly and sent it out to a machine shop and had it completely reconditioned and reassembled there. He said when the engine came back it was reassembled and reinstalled in the truck. At the bottom of the invoice Winkler wrote the words "Guaranteed for 50,000 miles" and signed his name. He testified that this was a guarantee of the repair work he had done, provided the vehicle subject only to "normal wear and tear." Winkler said by "normal wear and tear" he meant if the vehicle was operated for the purpose for which it was intended and at the same time maintained and kept full of water and oil.

Subsequent to the original repair work, the truck was brought back to Winkler and the driver told Winkler that the engine was using quite a bit of oil. Winkler told the driver he would check it out and he called Galloway's Machine Shop and told them the truck was using more oil than it should. Galloway attempted to have the matter repaired but apparently the engine continued to use excessive oil and the truck was again brought back to Winkler. Upon this occasion, Winkler said he looked at the engine and saw that it had been overheated, that it was discolored and he decided it had not been driven under normal wear and tear. Winkler said he called Galloway's Machine Shop and discussed it with them and was informed that Galloway would refuse to work on it again. When the truck was brought back the last time Winkler did not repair the engine. Galloway's testimony tended to confirm Winkler's view that the engine had been subjected to excessive use.

Mr. Roy Turner, President of SAR Manufacturing Company, testified that the work done on the engine the first time was a "complete overhaul, new sleeves, pistons, rings and bearings." He said the vehicle was returned within two to three weeks after the first work and it was noticed that the engine continued to use an excessive amount of oil. He said he called Winkler about the vehicle and was told to drive it a few days to see if the rings would not seat

and that if they did not he should bring the vehicle back. He said the vehicle was returned to Wrinkler in June and again in July and that after the second repair work, when the engine continued to use an excessive amount of oil, Winkler again stated the rings "will set on the thing" and that it was again driven for another few weeks. After the truck was taken back for repairs the last time, Turner said he again talked to Winkler, who said he would check into it and contact him, and that after a week or so without being contacted, he again contacted Winkler who said he was not going to honor the guaranty. Turner further testified that on trips the truck made in June, it used 25 quarts of oil in 654 miles and 41 quarts of oil in 909 miles, and 29 quarts of oil in 486 miles; in July, it used 24 quarts in 435 miles, and during a total of 8,800 miles since the first repair work, it used 146 quarts of oil. Turner further testified the truck was used for hauling his company's foam products which weighed only a fraction of the truck's maximum carrying capacity, and that the truck had been used under normal conditions. He said Winkler never mentioned anything to him about the driver having abused the vehicle.

■ We overrule appellant's first four points of error which, in effect, assert there was no evidence to support the trial court's findings that the engine ceased to operate in a serviceable manner. We sustain appellant's fifth point of error to the effect that the trial court erred in rendering judgment for the full amount of the sum paid by appellee to appellant for the initial repairs because there was no showing that the repairs made by appellant were entirely worthless to appellee.

■ The original repair work which appellant undertook to perform on appellee's truck was a general engine overhaul as indicated by the terms of the invoice. The appellant in effect guaranteed the engine would perform in a serviceable manner for the number of miles of service indicated. Upon a breach of the contractual warranty, appellee's measure of damages would be the difference between the amount paid for the repairs and the amount necessary to complete the work as guaranteed. Manzer v. Barnes, 213 S.W.2d 464 (Tex.Civ.App. —Amarillo 1948, n. w. h.); Patten v. Richardson Ford, Inc., 466 S.W.2d 820 (Tex. Civ.App.—Tyler 1971, n. w. h.). However, appellee was not entitled to judgments for the full amount of the payment for the original work unless the pleading and proof established that the repairs were entirely worthless. Manzer v. Barnes, 237 S.W.2d 686 (Tex.Civ.App.— Amarillo 1950, n. w. h.).

The evidence at best tended only to indicate that the vehicle continued to use an excessive amount of oil after the repair work and that such condition was never remedied by the appellant. While this evidence might support the trial court's conclusion that the engine ceased to perform in a serviceable manner, there was no evidence that the engine wholly failed to perform; conversely, there is no showing that appellee failed to receive any benefit from the repair work.

We are of the opinion that the evidence on this question was not fully developed and since an improper measure of damages was utilized in rendering judgment for appellant for the full amount of the payment made for the repair work, the judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.