BURLINGTON-ROCK ISLAND RAILROAD COMPANY V.
JACK ELLISON ET AL.

No. 7989. Decided January 6, 1943.
Rehearing overruled February 10, 1943.
(167 S. W., 2d Series, 723.)

*Thompson & Barwise* and *Luther Hudson,* all of Fort Worth, for petitioner.

The Court of Civil Appeals erred in overruling defendant's proposition that there was no evidence in this case showing that any negligence on the part of the defendant proximately caused the death of the deceased. Kelley v. Burlington-Rock Island Ry. Co., 100 S. W. (2d) 165; Webster v. Henwood, 134 S. W. (2d) 333; Sterling v. Texas & N. O. Ry. Co., 148 S. W. (2d) 686.

*Robert Dean,* of Navasota, and *Collins, Williams & Garrison,* of Lufkin, for respondents.

It was not error for the court to refuse to peremptorily instruct a verdict for the defendant. Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Texas 152, 30 S. W. 902; Texas & Pac. Ry. Co. v. Shoemaker, 98 Texas 451, 84 S. W. 1049; 30 Tex. Jur., 813.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was filed in the district court of Leon County, Texas, by Jack Ellison, Lissie Snow, formerly Lissie Ellison, joined by her husband, Ed Snow, Beulah Ellison, a person non compos mentis, who sues by and through her next friend and

brother, Jack Ellison, Fred Ellison and W. N. Ellison against Burlington-Rock Island Railroad Company, to recover damages alleged to have resulted to them on account of the death of W. L. Ellison. W. L. Ellison was the father of all of the above named plaintiffs except Ed Snow. Ed Snow joined his wife, Lissie Snow, in prosecuting this suit. It is alleged that W. L. Ellison died as the result of injuries received when he was struck by a passenger train operated by the railroad. It is alleged that the servants and employees of the railroad were guilty of negligence in the operation of such train and that such negligence was the proximate cause of W. L. Ellison's injuries and resultant death. No issue of sufficiency of pleadings is involved. We therefore treat all pleadings as sufficient.

This case has been twice tried, and, counting this appeal, has been twice appealed. At the first trial W. N. Ellison and Beulah Ellison were awarded recovery against the railroad for $1,000 and $1,500 respectively. All other plaintiffs were denied any recovery. On appeal by the railroad the judgment in favor of W. N. and Beulah Ellison was reversed and the cause remanded for a new trial, on account of an error in the charge. The judgment against all the other plaintiffs was in all things affirmed. 134 S. W. (2d) 306. In the first appeal the Court of Civil Appeals declined to pass on the sufficency of the evidence.

The second trial from which this appeal was prosecuted resulted in recovery by the plaintiffs, W. N. and Beulah Ellison, for $1,750 each. All other plaintiffs were again denied any recovery. This judgment was affirmed by the Court of Civil Appeals. 159 S. W. (2d) 569. The railroad brings error.

This trial in the district court was with the aid of a jury. The case was submitted to the jury on special issues. In response to such issues the jury found all the elements of discovered peril against the railroad. The jury also convicted the railroad of numerous acts of negligence which proximately caused the death of W. L. Ellison. There is no evidence in this record supporting the findings on discovered peril. This judgment must therefore stand or fall on the findings of negligence.

As to negligence the jury found that the railroad company was guilty thereof in numerous particulars. We deem it necessary to here note only the following findings:

1. That the train which struck W. L. Ellison was running at a rate of speed of 80 miles per hour and that the running of such train at that rate of speed at the time and place W. L. Ellison was killed was negligence.

2. That the servants and employees of the railroad in charge of this train failed to sound the siren as the train approached the place where W. L. Ellison was killed, and that such failure was negligence.

3. That the servants and employees of the railroad in charge of this train failed to begin ringing the bell 80 rods from the path where W. L. Ellison was struck, and failed to continue to ring such bell until the train had passed such crossing, and that such failure was negligence.

4. That the servants and employees of the railroad in charge of this train as it approached the path where W. L. Ellison was crossing the railroad track failed to blow the whistle, (sound the siren), of said train at a distance of at least 80 rods from such path, but sufficiently near thereto (not to be closer than 80 rods) as to be reasonably calculated to give warning to persons about to use said crossing of the presence of said train, and that such failure was negligence.

The jury found that each of the above acts of negligence was a proximate cause of W. L. Ellison's death.

The jury acquitted W. L. Ellison of all acts of contributory negligence charged against him. The jury further found that W. L. Ellison's death was not the result of an unavoidable accident.

Under the above findings, and others not necessary to here detail, the district court entered judgment for W. N. and Beulah Ellison in the sum of $1,750.00 each. The district court again entered judgment against all the other plaintiffs. This judgment was affirmed by the Court of Civil Appeals. 159 S. W. (2d) 569. The railroad brings error.

The application for the writ of error contains four points of error, but they all, in the end, amount to the same thing, which, in substance, is that to concede the railroad was guilty of all of the alleged acts of negligence found by the jury,

still it was error for the trial court to enter, and for the Court of Civil Appeals to affirm, this judgment against it, because this record contains no evidence sufficient, in law, to show that any of such acts of negligence was a proximate cause of this train striking W. L. Ellison. The application states that this was the only question presented by the railroad to the Court of Civil Appeals, and the opinion of that court makes the same statement. Under such a record we must assume that every act of negligence found by the jury against the railroad can, in law, form the basis of a judgment against it, if there is any evidence in this record sufficient in law to show that such act proximately caused W. L. Ellison's death. In this connection the railroad admits that W. L. Ellison met his death by being struck by one of its passenger trains, and further it admits that the train which struck him is one of which we shall later discuss. Simply stated, the evidence is conclusive that W. L. Ellison came to his death by being struck by one of defendant's passenger trains, and the identity of that train is not in doubt.

The opinion of the Court of Civil Appeals makes a very comprehensive and correct statement of the facts in this record touching the issue of proximate cause. In fact, all parties accept such statement as full and correct. In the interest of brevity we refer to and adopt it. As sufficient for this opinion we make the following abridged statement: The railroad's tracks run about north and south through the town of Normangee, Texas, the place where W. L. Ellison was struck and killed, and this same direction is maintained for a distance of about fifteen hundred feet to the north of such point. At the place of this accident there are two other tracks, one east and one west of the main line. The track to the west is about twelve feet from the main line at the point of the accident, and the track to the east about twenty-one feet. The train which struck W. L. Ellison was traveling from north to south on the main line, which is the center track. Only a few feet from where Ellison's body was found there was a well-traveled footpath, which crossed the railroad tracks in a southeasterly and northwesterly direction. This footpath leads from the business portion of the town of Normangee on the west side of the railroad to a gin owned by the deceased's son on the east side. This footpath was in daily use by many people, and had been in such use for many years. It was so well beaten that in places it was worn down below the surface of the earth as much as

six inches. The railroad had full notice of the path and its use by the general public, and had never made any objection thereto. About ten-thirty o'clock on the morning of this accident the railroad's stream-lined train, traveling south, passed through Normangee, a town of some five or six hundred inhabitants. This train passed through such town at a speed of eighty miles per hour. It passed the point where it struck W. L. Ellison at the same speed. The servants and agents of the railroad failed to give any warnings as such fast-moving train approached the footpath above described, and that in the face of the fact that it was a public crossing by long use, fully known to the railroad, and in the face of the fact that, according to the verdict of the jury, it was negligence for them to fail to give such warnings, and to run at such speed. Just a short while before he was killed, W. L. Ellison left the business portion of Normangee on the west side of the railroad to go to his son's gin on the east side. In making such trip he was traveling along the footpath above described. The wind was blowing from south to north almost at hurricane intensity. W. L. Ellison was traveling in a southeasterly direction. In order to see a train coming from the north he would have had to look backward, over his shoulder. He would not see such a train if he looked ahead of him in the direction in which he was traveling. When last seen W. L. Ellison was walking at a rate of speed of about 1½ to 2 miles per hour towards the railroad tracks. At this time he was from fifty to one hundred and fifty feet from the tracks. A very few seconds later the railroad's train came along. The servants of the railroad were negligently operating such train across this footpath, along which W. L. Ellison was traveling, at the rate of speed of eighty miles per hour; and furthermore they negligently propelled such train across this footpath without either ringing the bell or sounding the siren or horn, and without giving any signals whatever to warn pedestrains using the footpath of the approach of such train. The train was what is known as a stream-lined train. It was pulled by a Diesel electric engine, which did not make the usual noises of a steam engine. The engine was almost noiseless. The front of this train and back a piece was painted red. After the train had passed, W. L. Ellison's body was found lying on the passing track about ten or twelve feet from the main line, one foot on the east rail of the passing track and the other foot drawn up, and the head near the west rail at a point on the passing track

about even with the place where the footpath crosses the main line. The body had marks on the back and shoulder. The back was badly bruised, and the neck and shoulders crushed. On the back of the coat worn by deceased was a streak of red paint. The front of the engine pulling this train was painted red— the same color as the paint found on Ellison's coat. Ellison's body was found on the side of the track next to the gin, showing that he had crossed, or about crossed, the track when he was hit.

■ From the above circumstances we think the jury was justified in inferring or concluding: That Ellison left the business portion of Normangee to go to his son's gin on the opposite side of the railroad; that in making such trip he was traveling along the footpath above described, intending to cross this railroad track where the footpath crosses the same; that in traveling along such footpath he did not see or hear this fast-approaching, and almost noiseless train; that such train crew was negligently propelling such train at the rate of speed of eighty miles per hour, towards and across the pathway on which Ellison was walking, without sounding the siren or ringing the bell of such train; that Ellison continued to walk in the pathway towards and onto the railroad tracks along which this train was traveling, without knowing or having any warning of the approach of such train; that while at some point on or near the railroad track he was struck by the engine pulling this train; that had the servants and employees of the railroad in charge of the engine pulling this train rung the bell or sounded the siren, at the proper time before reaching the pathway along which Ellison was walking, he would have heard the same; and that had he heard such signals he would not have walked to a point in the footpath where he could be struck by this train. Under such a record, we are unable to say, as a matter of law, that the negligence of the servants and employees of the railroad did not proximately cause Ellison's death. Stated in another way, we are unable to say that the facts of this record did not justify the jury in drawing the inference above indicated, and such inferences certainly show that the negligence of the railroad's servants and employees proximately caused W. L. Ellison's injuries and death. Galveston, H. & S. A. R. Co. v. Wells, 121 Texas 310, 50 S. W. (2d) 247; Freeman et al v. W. B. Walker & Sons (Com. App.) 212 S. W. 637; Emberlin v. Wichita Falls R. & Ft. W. Ry. Co. (Com. App.) 267 S. W. 463; Houston E. & W. T. Ry. Co. v.

Boone, 105 Texas 188, 146 S. W. 533; Bock v. Fellman Dry Goods Co. (Com. App. opinion approved), 212 S. W. 635; Washington v. Missouri K. & T. Ry. Co. 90 Texas 314, 38 S. W. 764; Texas & N. O. Ry. Co. v. Ewing, (Civ. App. Writ Dismissed) 46 S. W. (2d) 398; Towns v. Texas & N. O. Ry. Co. (Civ. App.) 112 S. W. (2d) 265, (Writ Dismissed).

■ As we understand their brief and argument counsel for the railroad contend that there is no evidence in this record showing or tending to show that the negligence of the servants and employees of the railroad proximately caused W. L. Ellison's death because under such evidence his death might have happened in one of the several ways, and the evidence does not show that it happened in the way we have said the jury had a right to infer that it did to the exclusion of any other way. We overrule this contention. These plaintiffs were not required to exclude the probability that the accident might have occurred in some other way. To so hold would impose upon them the burden of establishing their case beyond a reasonable doubt. They were only required to convince the jury by a fair preponderance of the evidence that the accident resulted from the negligence of the defendant. Bock v. Fellman Dry Goods Co., 212 S. W. 635, supra.

In the Bock case just cited, the Commission had before it a case involving the very question here decided. The opinion was written by Judge Beeman Strong. We quote the following from such opinion:

"The plaintiff was not required to exclude the probability that the accident might have occurred in some other way. To so hold would impose upon her the burden of establishing her case beyond a reasonable doubt. She was only required to convince the jury by fair preponderance of the evidence that the accident resulted from the negligence of the defendant."

The railroad contends that the Court of Civil Appeals erred in holding that because the engineer and fireman in charge of this train were still in the employ of the railroad and were not placed on the witness stand the failure of the defendant to produce such witnesses justified the jury in presuming that their testimony would be unfavorable to the railroad. We do not consider it necessary to pass on the correctness of this holding. Even if it is incorrect it cannot be said that there is

no evidence in this record to support the jury's findings on proximate cause.

The judgments of the Court of Civil Appeals and district court are both affirmed.

Opinion delivered January 6, 1943.

Rehearing overruled February 10, 1943.