**SAM WHITE OLDSMOBILE COMPANY,**
Appellant,

v.

**JONES APOTHECARY, INC., et al.,**
Appellees.

No. 13505.

Court of Civil Appeals of Texas.

Houston.

July 21, 1960.

Rehearing Denied Sept. 8, 1960.

Craig C. Cantey, Jr., Houston, Dyess, Dyess, Prewett & Cantey, Houston, of counsel, for appellant.

Vinson, Elkins, Weems & Searls, Houston, Gaius G. Gannon, Jr., Houston, of counsel, for appellees.

WERLEIN, Justice.

This suit was brought by appellee, Jones Apothecary, Inc., against appellant, Sam White Oldsmobile Company, to recover for damage to its automobile resulting from a fire which broke out under the dash or panel of the car when an effort was made to start it about three weeks after its purchase. Appellee sought recovery (1) on implied warranty upon the sale of a new car, (2) upon implied warranty upon the repair of its car, and (3) on appellant's negligence in failing to make necessary repairs to the car. This appeal is from the court's judgment in the sum of $3,100 entered upon a jury verdict in favor of appellee on all issues. No complaint is here made by appellant of the judgment against it on its cross-action against General Motors Corporation.

Appellant, by its first point contends that the jury found there was an express warranty in connection with the sale of the automobile in question and therefore no implied warranty arose. In appellee's motion for judgment, it prayed that the court disregard the jury's finding of express warranty because such finding had no support in the evidence. The court so held. We are of the opinion that the trial court's action was proper. The record does not contain any evidence that the alleged express warranty was delivered to appellee at the time of the sale, or that appellee's president, Mr. Jones, was notified thereof or had any knowledge of any written warranty. Moreover, when the express warranty was introduced in evidence, it was offered as between appellant and General Motors Corporation, against which company appellant had filed a cross-action for indemnity, and not as between appellant and appellee.

We sustain appellant's second point to the effect that where requested repairs are made to an automobile, no implied warranty arises that the entire automobile is suitable and fit to perform the ordinary purposes which new cars are expected to perform. There can be no warranty in the usual sense without a sale. Bender v. Howell, Tex.Civ.App., 19 S.W.2d 123; 77 C.J.S. Sales § 302b. As to the liability of one holding himself out as capable of making repairs, see Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 7–A, Sec. 5029; Manzer v. Barnes, Tex.Civ.App., 213 S.W.2d 464.

Appellant, by its Points 3 to 7, inclusive, contends that the court erred in entering judgment on the jury's findings of negligence because there was no evidence and insufficient evidence of negligence, and also because there was no evidence and insufficient evidence that repairs negligently made or necessary repairs not made constituted the proximate cause of the accident. We shall briefly review the evidence.

The car in question was bought on April 30, 1955, by Jones Apothecary, Inc., for the personal use of its president, Mr. Jones. Mr. Jones used the automobile for about three weeks until May 21, 1955, when it was practically destroyed by fire. He was the only person who drove the automobile during such period, with the exception of his porter, George Davis, who occasionally used the car, had it serviced and took it to appellant for repairs. When not in use, the car was parked either in a Classified Storage Garage near the offices of appellee in Houston or in Mr. Jones' residential garage in Alief, Texas, a nearby village from which he commuted. When in use, Jones would at times leave the car in front of appellee's various stores which he visited. The car was returned to appellant on May 3, 1955 for installation of an air conditioning unit, and on May 9, 13 and 16 for repairs. It was shown that the installation of the air conditioning unit required extensive work under the dashboard or panel of the automobile where there were a number of live wires. On May 9 the car was returned for minor adjustments, including removing the U-brace from the steering column to loosen the steering mechanism. On May 13 the car was returned for other minor adjustments, including work on the cigarette lighter which had stuck and become overheated. On May 16 appellee's employee, George Davis, undertook to take the car to appellant's garage and while en route, the motor stopped and the car had to be pushed to the garage where work was done on the ignition system, including the tightening of electric connections and checking the starter.

Mr. Jones testified that the cigarette lighter stuck and overheated all the time, and that en route to the cafe on the Tomball Highway where he took his family for dinner on the evening of the fire, the lighter again stuck and became red hot. He parked his car in front of the cafe, closed all of the windows and locked the car. After dinner he and his party returned to the automobile. He unlocked the doors and got in and tried to start the motor twice without success. The third time he tried to start it, a fire broke out under the panel. He testified, "The third time I tried to start it was when it just fired off underneath there. Stuff starting dropping on our feet and right away he jumped out of the car. I grabbed the chamois to put those wires, to put them out, I couldn't put them out, it just went all the way across just right now."

The wiring under the dashboard was the initial location of the fire. There was no smell of gasoline or other unusual odor in or around the car before or after the fire. Mr. Jones further testified that there had been trouble in the ignition switch, and that appellant had put a new switch on it on May 16, being the day that the car stopped when Davis was driving it to appellant's service garage.

R. W. Strangely, who inspected the car after it had burned, testified that he discovered no evidence of arson but was not

able to make an independent determination as to the cause of the fire, but that the wires under the dashboard were pretty well destroyed. He further testified that fires were big when they start from wiring.

George Davis testified that on several occasions he could not get the automobile started until he had made several attempts to get the motor to turn over, and that on one occasion the motor stopped and an employee from appellant tried to start the car but the motor had gone out. He could get no sound out of the motor when he turned the ignition switch. The car was then pushed into appellant's garage where it was inspected and he heard one of the appellant's employees say, "I guess it's the ignition or something." This was just five days before the fire on May 21.

A. E. Smith and Joe Lee, both mechanics and employees of appellant at the time their depositions were taken, had worked on the car, but neither of them independently recollected what work was done. They testified by reference to work charts. When asked about the work done on the car as indicated on an exhibit, which showed that he had tightened the electrical connections and checked the starter, Smith testified that if they have starter trouble, they normally check for loose connections on a new car and check the safety switch adjustment to make sure that it is working right; that the car in question was started by turning the key; that it had to be in neutral, "that is what was wrong with the starter, was the neutral safety switch", located on the steering column; that evidently he made the correction so that the car would start o. k. as otherwise they would not have delivered the car; that tightening the electric connections amounted to tightening the wires where they join on the battery and junction box, and safety switch; that he thought there were only four wires under the dash that you could feel and tell whether they were tight; and that the wires underneath the dash "on the ignition itself there, they are the only ones you tighten, the others you clip together."

He further testified that with respect to having had any experience with wiring catching on fire, "I have replaced several complete wire harnesses when they did catch on fire, but it only will burn one wire, the wire that is grounded will burn into, of course, it will burn all the way into the circuit and you have to put on a complete wire loom * * *. That is the whole unit, all taped together * * *." When asked whether a wire that caught on fire would involve any of the other wires which were in close proximity to it, he stated, "It probably would ruin the insulation on it, but the 12 volts would burn the one wire into and of course it would break your circuit." He further stated that if one wire burns you don't have to replace the whole wire loom but that it was a good idea to do it. Also that "there would probably be one wire burnt, but the heat would damage some of the others, probably." When asked whether it would be impossible for the other wires to become involved, or have a general fire involving all of the wires when you have such conditions, or a mechanical failure in the voltage regulator, he testified, "It is not impossible, but it is not likely." He stated with respect to wires under the dashboard becoming involved with each other and causing a fire, "If the insulation were broke and two wires were getting together, it could cause a fire." He further testified that any work on the dash involves those wires on account of the fact that "you can't get two fingers up there without touching a wire." He did not know of any defect that would cause the whole car to burn up, but testified, "Now, the wire could burn off but all that I have seen, when the wire was grounded, it burned the wire up. It might require a complete rewiring to fix it but not to burn one up, to destroy the whole thing." He made it clear there were no gasoline or fuel lines under the dash.

Lee testified that in installing the air conditioning unit it would be necessary to do quite extensive work in and about the

area under the dashboard; that the cigarette lighter operates off the ignition switch with a fuse in between; that if the cigarette lighter remained in too long and got excessively hot and wouldn't flip out, it would be a faulty unit and would burn the fuse, and that if one wire goes it would be the wire involved. When asked a hypothetical question based upon the facts in the instant case, he stated that "He could have had a bad ignition switch is about the only thing I can see could have caused that," and that according to his best guess the fire in question was caused by a defective ignition switch, although he didn't think the fire could be as extensive as it was, and that if anything was wrong with the ignition switch, the wire leading to it would be the one that was involved.

Appellant introduced no evidence whatever in explanation of what might have caused the fire in question. The work sheets of the defendant and the testimony of the mechanics who had worked on the car, as well as the testimony of Mr. Jones, disclose that the car had been returned for repairs to be made on the cigarette lighter, ignition switch and starter. The evidence shows that trouble with the ignition switch would probably burn only one wire but that the heat therefrom might injure other wires, so that in such event it would be a good practice to put in an entire new wire loom. There was no testimony whatever that this was done. There was testimony that if the cigarette lighter stuck and overheated, it too could cause the burning of one wire. It thus seems that as many as two wires could have been involved on the occasion in question since the cigarette lighter stuck and became red hot on the evening of the fire, and the ignition was not working properly.

While no one testified positively that the fire resulted from the faulty ignition or cigarette lighter, the evidence shows that in all probability the fire did result from a defective wiring system, including the faulty ignition and cigarette lighter, and that the defective condition of both the ignition and lighter was due to the failure of appellant to make proper and necessary repairs when the car was returned to appellant's place of business.

We cannot say that appellee has negatived every other possibility but we find no evidence in the record that indicates that the fire was caused by anything other than the defective condition of the ignition or lighter or the wiring in connection therewith. There is no evidence that the car was treated improperly by the owner or the colored employee, who were the only ones who drove the car, other than the attendant who parked it on the first floor of the Classified Storage garage. The car was locked and the windows closed while it was parked at the cafe, and there is nothing to show that during the time that Jones and his party were in the cafe anyone had in any way tampered with the car. When he went out and unlocked it, everything was apparently in proper condition. It was only after he tried to start the car that the fire broke out.

█ The burden was on appellee to show that appellant's negligence probably caused the fire. The law does not require the plaintiff to exclude every reasonable hypothesis that the damage was caused by something other than the negligence of the defendant. In Collier v. Hill & Hill Exterminators, Tex.Civ.App., 322 S.W.2d 329, 337, it was contended by the appellees that there was no evidence showing that any act of appellees was the proximate cause of the child's death. They further contended that the evidence gave rise to more than one inference and any one of them would absolve the defendant of liability. This Court stated:

"Appellees say that there is no evidence showing any act of appellees was the proximate cause of the child's death. They contend, and correctly so, that proximate cause may not be presumed. They contend the evidence gives rise to more than one inference and any one of them would absolve the

defendant of liability. We are unable to agree with this contention.

"Proximate cause may be established, the same as any other element of a cause of action, by circumstantial evidence. Bock v. Fellman Dry Goods Co., Tex.Com.App., 212 S.W. 635; Henry v. Publix Theatres Corp., Tex. Civ.App., 25 S.W.2d 695, error ref.; Tex.Jur., Vol. 30–B, Sec. 158. In applying the rule, it is held that if a cause is shown that might produce an event and it being shown that an event of that particular character did occur, it may be inferred that the known possibility produced the result. Plaintiff is not required to exclude an appreciable chance that the event might have occurred in some other way. Expressed otherwise, a conclusion of casual connection may be inferred by a balance of probabilities. Bock v. Fellman Dry Goods Co., supra."

We agree with appellant's contention that this is not a case of res ipsa loquitur. As stated by appellant, in order to prevail appellee had to show that some defect existed, making a repair necessary, and that appellant failed to make the repair, and that such failure was a proximate cause of the damage. We have carefully examined the entire record, and have concluded that by strong circumstantial evidence appellee has met the burden imposed upon it. We think the evidence is clear that both the ignition and cigarette lighter were defective when the car was returned to appellant's garage for repairs. The fact that they failed to function properly so shortly after the repairs were supposedly made, shows that repairs necessary to put them in proper functioning or good operating condition were in all probability not made. We think the evidence shows that such failure not only could have caused the fire but that in all reasonable probability it did. "Both negligence and proximate cause may be established by circumstantial evidence." Bock v. Fellman Dry Goods Co., supra [212 S.W. 637]. See also Beaumont Iron Works

Co. v. Martin, Tex.Civ.App., 190 S.W.2d 491, ref., w.m.; Ice Service Company v. Scruggs, Tex.Civ.App., 284 S.W.2d 185, ref. n.r.e. We think the cases relied upon by appellant are distinguishable and inapplicable to the facts in the present suit.

We have carefully considered all of the evidence, both favorable to the verdict and that militating against it, and have concluded that the jury's findings to the issues on negligence and proximate cause find ample support in the record and that they are not contrary to the overwhelming weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660; Tudor v. Tudor, 158 Tex. 559, 314 S.W.2d 793.

We sustain appellant's eighth point asserting that the court erred in entering judgment on implied warranty. In view of our holding with respect to the jury's findings of negligence and proximate cause, we think it unnecessary to discuss this point at length. Suffice it to say that under the facts of this case as hereinabove related, it is our opinion that any implied warranty that may have existed at the time of the sale did not extend to the destruction of the car three weeks later from a fire which in all probability resulted from improper repairs made after the car had been driven some two weeks.

Appellant asserts that Special Issues Nos. 7 and 10 assume that appellant undertook to make all necessary repairs and that some repairs were necessary which were not made, and that such issues amount to comments on the weight of the evidence, and are defective in that they left the jurors free to speculate and conjecture and did not inquire of them what particular repairs were necessary.

Issue No. 7 reads: "Do you find from a preponderance of the evidence that when the 1955 Oldsmobile was repaired by the Defendant on May 13, 1957 the Defendant failed to make such repairs as were necessary to put the automobile in good operating condition?"

Issue No. 10 is identical with No. 7 with the exception that the date is changed from May 13, 1957 to May 16, 1957.

At first glance said issues appear to be too general and broad although they conform to appellee's petition. When such issues are read, however, in light of all the evidence adduced at the trial, we cannot say that the jurors were probably misled or that there was anything upon which they could speculate or conjecture with respect to the repairs necessary to put the car in good operating condition. No contention is made and no evidence was adduced that anything was wrong with the car at the time it burned other than the faulty cigarette lighter, ignition and starter involving the wiring system under the dash or panel where the fire started. Nothing other than proper repairs of the wiring system, including the lighter and ignition apparatus, was necessary to put the car in good operating condition. All of the evidence before the jury pointed directly to the only repairs that were necessary or could have been referred to or encompassed in such issues. The phrase "good operating condition" could under the evidence have referred only to the good functioning or operating condition of the wiring system and appliances.

It is our opinion that said issues do not amount to comments on the weight of the evidence or assume that any repairs were necessary to put the car in good operating condition other than those presumably made in connection with the defective wiring system and connections, including the ignition and lighter. The evidence shows that the bad operating condition of the car at the time of the fire was limited to the defective wiring system.

This Court will not presume that the jury, in answering the issues in question, ignored the evidence as to the defects which probably caused the fire, in the absence of any other reasonable or plausible explanation therefor.

We think our conclusion is supported by the reasoning of the court in International-Great Northern R. Co. v. Hawthorne, Tex. Civ.App., 90 S.W.2d 895, affirmed 131 Tex. 622, 116 S.W.2d 1056, 1058. Judge Hickman, in speaking for the Commission of Appeals, stated:

"The rule is that it is improper to submit negligence in general terms over the objection of the opposite party in a case where specific acts of negligence are pleaded and relied upon * * * If the evidence raised an issue of fact as to whether that act of negligence existed, the question submitted to the jury should have related specifically thereto, but this record presents the unusual situation of there being no issue of fact as to this specific act of negligence."

In the present case the evidence raises no issues of fact with respect to alleged specific acts or omissions of negligence occurring at the time of the sale or prior thereto. The other acts or omissions of negligence which were the only ones submitted for consideration of the jury were pleaded generally in almost the identical language of the issues in question.

The ultimate issue was whether appellant failed to make such repairs as were necessary to put the car—that is, its wiring system and apparatus connected therewith, being the only proven defective part—in good operating condition. The jury could not have considered any other repairs as the evidence showed no need therefor. True, the issue is general, but under the peculiar facts of this case appellee was not in a position to pinpoint specifically the defects responsible for the fire, other than to show they were in the wiring system. As stated in Texas Company v. Giddings, Tex. Civ.App., 148 S.W. 1142, 1143:

"Ordinarily, the act done or omitted and charged to be negligent must be averred. Where, however, from the nature of the case the complainant would not be expected to know the exact cause or the precise negligent act and where the facts are peculiarly

within the knowledge of the defendant, it is sufficient in a general way to allege the negligence."

 We think the rule thus enunciated is likewise applicable to the submission of issues. See Montgomery Ward & Co. v. Scharrenbeck, 1947, 146 Tex. 153, 204 S.W. 2d 508, with respect to the duty imposed upon one to perform with care and skill the thing agreed to be done or undertaken, and Manzer v. Barnes, Tex.Civ.App., 237 S.W. 2d 686, in which a general issue was submitted inquiring as to whether or not a garage owner failed to make repairs on an automobile in a skillful and workmanlike manner. Regardless of any express agreement between appellant and appellee in the instant case, when appellant accepted the car and undertook to make repairs which, if properly and adequately made, would have put the car in good operating condition, it thereby assumed the duty of doing the work in a skillful and workmanlike manner.

The case of Clary v. Morgan Motor Co., Tex.Civ.App., 246 S.W.2d 936, 937, relied upon by appellant, is distinguishable in that in such case specific acts of negligence were submitted to the jury and found against the appellant, although based on the same evidence the jury found favorably to appellant on a general issue inquiring whether appellee maintained the premises in a safe condition. The court stated:

"Ordinarily, general averments of negligence or contributory negligence are limited and controlled by various acts specified and the special issues should be restricted to said specific acts of negligence alleged and proved."

The case of Roosth & Genecov Production Company v. White, 152 Tex. 619, 262 S.W.2d 99, is also distinguishable in that in such case the defective character of the derrick was submitted globally in one issue although particular items of defectiveness were pleaded respectively as separate counts of negligence in some 21 separate paragraphs of the respondent's petition.

It doubtless would have been better practice to have directed the issues more particularly to the wiring system and faulty apparatus connected therewith, but since negligence was pleaded generally and the evidence was such that the jury must necessarily have known that only such wiring system was involved and that the issues in question were actually referring thereto and nothing else, we cannot say that the manner of submission constitutes such a denial of the rights of appellant as was calculated to cause and probably did cause the rendition of an improper judgment in this case. Rule 434, Texas Rules of Civil Procedure.

Judgment of the Trial Court is affirmed.