**CONGRESSIONAL INSURANCE COMPANY, a corporation, Appellant,**

v.

**FORD MOTOR COMPANY, a corporation, Appellee.**

No. 3355.

District of Columbia Court of Appeals.

Argued Feb. 10, 1964.

Decided March 30, 1964.

Albert D. Brault, Washington, D. C., with whom Benjamin W. Cotten, Washington, D. C., was on the brief, for appellant.

Harvey B. Bolton, Jr., Washington, D. C., with whom Richard W. Galiher, William E. Stewart, Jr., and William H. Clarke, Washington, D. C., were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

Appellant, subrogee of Joseph Henry Wood, sought recovery for a loss sustained by Wood when his automobile was destroyed by fire. Appellee filed a third-party complaint against the dealer, Triangle Motors. At the close of appellant's case, the court entered a trial finding in favor of appellee and Triangle Motors. The sole question on appeal is whether appellant established a prima facie case.

The facts are as follows: On October 5, 1961, Wood purchased a new Ford automobile from Triangle Motors. On January 11, 1962, as was his usual practice on cold mornings, he started the engine while the car was parked in the driveway of his home. He then went inside to drink a cup of coffee, and a few minutes later he saw a man run into his yard. Wood opened the front door and discovered his car engulfed in flames. He immediately called the fire department. After the fire was extinguished the car was towed to Triangle Motors.

Wood testified that Triangle Motors serviced the car prior to delivery. Thereafter he had occasion to check the tires and lights, look under the hood, and have the mechanics at the gas station check the oil. At the time of the fire the car had been driven between 5,000 and 6,000 miles. Wood stated that there were only two occasions when any work had been done on the engine. The first occurred when a service station replaced the standard oil filter with which the car was equipped. The second occurred when he noticed the smell of gas shortly after purchasing the car. His own inspection disclosed that the gasoline filter bowl was leaking and he was able to tighten it with his fingers.

George David, one of Triangle's mechanics, testified that after the fire the car remained in the shop for some period of time but was not worked on or touched by anyone. During this period the car was inspected by an appraiser. Subsequently, David purchased the automobile salvage and took the car to his home where he dismantled some of the parts and put them in running order. The same appraiser made a second inspection of the automobile and the parts at David's home. David stated that at the time of the second inspection the parts were in the same condition as when removed from the car, with the possible exception of being cleaned. To the best of his knowledge they had not been touched or tampered with by anyone else.

The appraiser, Robert W. Cinibulk, qualified as an expert witness. He testified that he examined the car at Triangle Motors and formed a tentative opinion as to the cause of the fire. He asked permission to examine the parts of the gasoline system when they were dismantled and subsequently inspected the car at David's home. In his opinion the fire was caused by a leak from the gasoline fuel filter up to a metal line which led into the carburetor on the top of the engine. The leak developed in this line and while the engine was idling, gasoline fluid and vapor were blown by the fan back over the engine compartment and caused to ignite. The flame then followed the leak back into the hose (part of the line from the gasoline fuel filter to the carburetor).

An inspection of the hose disclosed that it was burned in the middle but undamaged and connected at both ends. The fire was located principally in the back left fire wall of the engine compartment and underneath the left side of the car. Damage extended to the left door and fender. The interior of the car was damaged by smoke and soot but not by fire. Cinibulk stated that the leak in the gasoline hose could have developed either by reason of a defect in the hose itself or because of something that was done to the hose during or following its assembly at the plant. Because the hose was almost totally destroyed he could not render an opinion as to how the leak occurred.

At the conclusion of the above testimony and after the introduction of the Ford dealer's warranty, the court entered a trial finding on the ground that appellant had failed to prove there was an inherent defect in the hose or that the hose had been damaged prior to delivery to Triangle Motors.

In Automobile Insurance Co. of Hartford, Conn. v. Ortho Williams Buick, D.C. Mun.App., 111 A.2d 874 (1955), we had occasion to consider strikingly similar circumstances. There a 1953 Buick, which was then a few months old, suddenly burst into flames the day after a "major motor tune up." Like the case at bar, the motor was so badly burned that the precise starting place of the fire could not be determined. Nevertheless, we reversed a directed verdict at the close of the plaintiff's case holding that the circumstantial evidence was sufficient for reasonable minds to conclude the fire would not have occurred without some fault on the part of the garage repairman. More recently, in Simpson v. Logan Motor Company, D.C.App., 192 A.2d 122, 124 (1963), we approved the view "that while the existence of a defect cannot be found on the basis of mere conjecture or guess, it is not necessary to exclude every other possible cause which the ingenuity of counsel might suggest." There we were concerned with a brake failure which, in the opinion of plaintiff's expert witness, was caused by a defective by-pass valve. We held that the plaintiff had established a prima facie case. We think the case at bar falls squarely within these two rulings.

Here appellant's expert testified that the cause of the fire was a leak in a connecting hose between the gasoline fuel filter and the carburetor. Because the hose was almost totally destroyed, it was impossible to determine the exact place where the leak occurred. Similarly, it was impossible to determine how or why the hose was defective. However, appellant introduced evidence to preclude the possibility that any intervening cause had produced the leak from the time of sale to the time of the fire. While appellant did not introduce evidence to exclude every other possible cause, it presented sufficient evidence for reasonable minds to conclude that the hose was either inherently defective or damaged prior to sale. Certainly, this was a reasonable inference given appellant's evidence. Taylor v. Reo Motors, Inc., 275 F.2d 699 (10th Cir. 1960); Markel v. Spencer, 5 A.D.2d 400, 171 N.Y. S.2d 770, affirmed 5 N.Y.2d 958, 184 N.Y.S. 2d 835, 157 N.E.2d 713 (1958). Therefore it was error to enter a finding at the close of appellant's case.

Reversed with instructions to award a new trial.