Jane W. SHARP, Appellant,

v.

CHRYSLER CORPORATION et al.,
Appellees.

No. 142.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Sept. 4, 1968.

Rehearing Denied Oct. 2, 1968.

W. W. Watkins, W. James Kronzer, Brown, Kronzer, Abraham, Watkins & Steely, Houston, for appellant.

Finis E. Cowan, F. Walter Conrad, Jr., Baker, Botts, Shepherd & Coates, Houston, for appellees.

BARRON, Justice.

This is a products liability case involving personal injuries sustained by plaintiff, Jane W. Sharp, when the braking system of the right front wheel on a 1965 model Dodge Dart automobile failed in service when the vehicle had been driven 1,600 miles. Plaintiff filed suit against Palm Center Dodge, Inc.; Chrysler Motors Corporation, Dodge Division; Chrysler Corporation; and Marcus-Jones Buick, Inc., alleging common law negligence of the defendants, and also alleging strict liability in tort. Plaintiff's claim is that the Dodge

Dart automobile was in a defective condition when it left the hands of each seller.

At the conclusion of plaintiff's case the trial court directed verdict in favor of Chrysler Corporation and Chrysler Motors Corporation. Palm Center Dodge, Inc. and Marcus-Jones Buick, Inc. were dismissed from the suit without prejudice. The appellant is Jane W. Sharp, and the appellees are Chrysler Corporation and Chrysler Motors Corporation. Appeal by Mrs. Sharp has been duly perfected to this court.

Appellants have assigned four points of error, the substance of which is that the trial court erred in instructing the verdict because the evidence was sufficient for submission of issues to the jury on grounds of common law negligence and strict tort liability, and because the trial court erred in ruling that the witness LaRue was not qualified to express an expert opinion regarding the defective nature and design of the braking mechanism as well as the defective installation of the adjusting unit of the brakes, and the alleged error of the trial court in refusing to permit the witness LaRue to testify as to how the adjusting unit became detached from its normal position which allegedly resulted in brake failure.

The accident occurred on March 25, 1965. The automobile was manufactured at some time before September of 1964, and on September 1, 1964, the vehicle was sold by Chrysler to Pasadena Dodge. The vehicle remained in the possession of Pasadena Dodge until December 7, 1964. There is no evidence concerning the use of the vehicle while it was in possession of Pasadena Dodge, a local dealer. On December 7, 1964, the vehicle was sold to Palm Center Dodge, which retained ownership of the vehicle until December 31, 1964, when it was sold to V. W. Tipton. Four days after the car was sold to Tipton it appeared to be rusty on the inside, the chrome was corroded and dirty, the outside had nicked places on it, and it had not been polished. No use of the car was shown while it was

owned by Palm Center Dodge. Tipton drove the car only four days, and during this period of time he collided with an object causing damage to the right front portion of the vehicle. The right front fender was damaged, the grill was mashed, and the mechanism supporting the right wheel was damaged badly enough so that it was necessary to replace the A-frame. The A-frame was not composed of heavy steel and was not a part of the total chassis support structures, but was described as a "frame and it's nothing but sheet metal." Various witnesses performing repair work on the car testified that the braking mechanism operated properly after the repairs were made to the car, and that it was not necessary to open the braking unit. Also, the steering mechanism was damaged to some extent. The front bumper, the radiator case support, the lower control arm and the cowl were somewhat damaged. The right front wheel disc, which was shown to be the aluminum hub cap, was slightly bent and was replaced. The front end of the car required re-alignment. Total cost of the repairs was approximately $265.00. Tipton died in early January, 1965, and there is no evidence in the record of the use or abuse of the car while it was in his possession, except the accident above.

Mrs. Tipton then apparently sold the car to Brazos Engineering Company, Mrs. Sharp's employer, the latter part of January, 1965. The vehicle was used by Brazos as a company car. It was represented to Mrs. Sharp as being a new car, without disclosure of the fact that it had been damaged. The custom was to leave the vehicle in front of Brazos Engineering Company where it was susceptible to use of several persons. The vehicle operated acceptably up until February 25, 1965, when it developed mechanical trouble of an undetermined nature. The apparent defect was in the engine, and the mechanical repairs did not relate to the braking system. The car was again in Mrs. Sharp's possession after about four days. Both before and after the four-day period during which the

vehicle was being repaired while owned by Brazos Engineering Company, appellant positively testified that the braking system operated perfectly. The evidence shows that until the time of the brake failure immediately before the accident the brakes "operated perfectly." There is no evidence to suggest that the interior mechanisms of the brake system was ever exposed. To have invaded such mechanism would have required the removal of a large nut, the removal of a cotter key, and the disturbance of the grease seal. It was shown that such action was never called for or was never necessary from the time appellees surrendered possession of the vehicle to Pasadena Dodge until the time of the accident in which Mrs. Sharp received injury. The claimed defect in the braking system which caused brake failure while Mrs. Sharp was driving the car, was within an encased steel container or mechanism, and it was not open for tampering or repair without removal of the large nut, cotter key and grease seal above.

The witness LaRue testified substantially as follows: the brake system on the vehicle was a self-energizing system. When the brake pedal is depressed, force is transmitted to the hydraulic system causing a piston in the brake cylinder to push the primary or front shoe into contact with the brake drum. The force of the shoe on the brake drum is transmitted through the adjusting mechanism to the secondary or rear shoe, and when the adjustment mechanism is completely out of place, a total brake failure and loss of all brake fluid will result. The adjusting mechanism or unit did become completely dislodged before the accident, thus causing a total failure and loss of fluid, according to the witness. He further testified that the damage to the parts of the brake system involved occurred because the automatic adjuster mechanism became dislodged from its proper place, was wedged in between the bottoms of the two shoes, and was damaged while in this position. The testimony shows that the adjusting unit was approximately 2¾ inches in length at the time it was found following the entry into the braking unit, and that this is the minimum length of the adjusting unit. In such a position it is not difficult to remove. Because Chrysler does not use a horizontal retaining spring which would be parallel to the adjusting unit when in place, it takes little effort to remove the adjusting unit on a Chrysler product from its position. LaRue felt that at some point in time before the accident occurred, the automatic adjuster had become dislodged from its normal position and wedged between the two bottom ends of the brake shoes, and had remained there for some period of time, affording partial braking power, and allowing the parts in question to be abraded and damaged. He gave no testimony as to exactly when the automatic adjuster had become dislodged, nor did he testify as to the period of time that the vehicle could have operated with the adjuster in its dislodged position. He testified that some of the marks on the damaged parts were consistent with abuse by a hammer or blunt instrument, though that was only a possibility. He never did testify that the damage he found could not have been caused by tampering or by the January accident. He expressed the opinion that the adjuster had been out of place for a "substantial" period of time and a substantial distance. He was a partner in an automobile repair business and had been an automobile mechanic repairing brakes for thirty years. He was familiar with all types of braking systems, including those of General Motors and Chrysler.

Exhibits and testimony of LaRue show that there was a hole at the lower portion of each of the brake shoes. The brake shoes were manufactured by Bendix and were used by Chrysler in its total brake design. Similar brake shoes were made by Bendix and sold to other manufacturers and assemblers. These holes were used by General Motors to attach a spring that would be parallel to the adjusting unit and connect the two brake shoes together in such manner. According to LaRue, on

appellant's bill of exceptions, this gives greater stability to the area where the adjusting unit is inserted and would make it more difficult for the adjuster to become displaced. The trial court refused to permit LaRue to testify that General Motors did use a horizontally attached spring, or that such a spring would give additional stability, or to state what the holes were for. Moreover, the trial court denied the witness the opportunity to testify as to his explanation of the manner of brake failure, and it refused testimony of the witness regarding what method could be used to insure the fact that the adjusting unit would stay in place—a form of design testimony.

As a general matter cases are not to be submitted for jury consideration when there is no evidentiary foundation on which to predicate intelligent deliberation and reach a reliable verdict. Regardless of the above rule, a court is not concerned with every conceivable possibility in a cause of action, but rather with what the evidence will establish as a reasonable probability. While the burden of making a case on all necessary points is on the plaintiff, if evidence is offered from which reasonable minds could reach a reasonable conclusion, the question is for the jury. Here, an instructed verdict was given by the trial court, and judgment was rendered thereon in favor of the appellees. The plaintiff is not required to exclude an appreciable chance that the event might have occurred in some other way. Expressed otherwise, a conclusion of causal connection may be inferred by a balance of probabilities. Bock v. Fellman Dry Goods Co., 212 S.W. 635 (Tex.Com.App.); Sam White Oldsmobile Co. v. Jones Apothecary, Inc., 337 S.W.2d 834, 839 (Tex.Civ.App.), writ ref., n. r. e.; Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792, 797; Burlington-Rock Island Ry. Co. v. Ellison, 140 Tex. 353, 167 S.W.2d 723. The question depends upon the actual probabilities and the reliability of the inferences from the evidence.

Viewing the evidence most favorable to the plaintiff-appellant, and disregarding all the unfavorable testimony and inferences, it is established in the record and by competent evidence that the vehicle in question had been driven only 1,600 miles; that the brake drum had not been invaded or taken apart prior to the occurrence; that the damage to the internal parts did not appear to have been externally caused; that the immediate cause of the brake failure was the complete displacement or dislodgement of the adjusting unit; that a partial disengagement had preceded the complete failure of the adjusting unit; that the previous accident which occurred while Tipton was operating the Dodge Dart was not calculated to cause internal damage; that it was not necessary to enter the encased braking mechanism at that time, and that the brakes operated perfectly following the Tipton accident from about January 5, 1965 until March 25, 1965, the date of the accident.

While it is true that none of the above facts might be considered established as a matter of law after a completed trial, the evidence is sufficient to raise the issues of fact for a jury to determine, and we cannot treat this case as though appellees had prevailed before a jury. And while it might be considered fatal to appellant's case that the vehicle was involved in an accident, there is no evidence to indicate that the braking system was damaged therein or involved in any manner. On the other hand the only evidence concerning the accident had to do with external damage, and the braking system was not involved in any way, at least as a certainty or as a matter of law.

We do not regard the arguments of appellant concerning the sealed container theory as absolutely controlling. In McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup.), it was held that when it is shown that the defective product came in a sealed container, it is inferred that the product reached the injured consumer without substantial change in the condition in which it was sold. However, under the facts of this case, the encased or enclosed

braking system which was not open to the public or anyone else for tampering or repair, and there being no cause to indicate that the brakes were damaged or involved, lends credence to the fact that the brakes were not involved or damaged from the time appellees surrendered possession of the vehicle to the dealer until the time of the accident. We believe that under the circumstances a lawful inference existed for the jury to make the determination of whether or not the accident or other causes intervened to destroy the liability of appellees.

 In this newly expanding field of law relating to products liability, and particularly those decisions which may be classified as "strict liability" holdings, the existence of a defect at the time possession and control is surrendered by the manufacturer or assembler must be established, but there is no inflexibility in the meaning given to the word "defect." To constitute a defect it is not necessary that the ultimate "defect" as it appeared and developed shortly prior to the accidental occurrence existed in that form at the time possession was surrendered. See Vandermark v. Ford Motor Co., 61 Cal.2d 256, 391 P.2d 168, 37 Cal.Rptr. 896 (1965); Alvarez v. Felker Mfg. Co., 41 Cal.Rptr. 514; Dunham v. Vaughn & Bushnell Mfg. & Bell Knapp Hardware & Mfg. Co., 86 Ill.App.2d 315, 229 N.E.2d 684 (1967); Restatement of Torts, (2d Series), Sec. 402A, Comm. P. and Q. The rule is that if the manufacturer or assembler surrenders possession and control of a product in which change will occur, or in which the change can be anticipated to occur so as to cause a product failure, the existence of a defect at the vital time is established. If an assembler or a manufacturer places into the channels of trade a product so fragile that anticipated use is likely to create a dangerous condition, he has distributed a defective product. See also Ford Motor Co. v. Grimes, 408 S.W.2d 313 (Tex.Civ.App.), writ dismd.; Congressional Ins. Co. v. Ford Motor Co., 198 A.2d 918 (Ct.App.D.C., 1964); LeBlanc

v. Ford Motor Co., 346 Mass. 225, 191 N.E.2d 301, 6 A.L.R.3d 83 (1963). And compare Standard Motor Co. v. Blood, 380 S.W.2d 651 (Tex.Civ.App.), no writ.

 Appellees cite our recent decision in the case of Coca Cola Bottling Co. of Houston v. Hobart, 423 S.W.2d 118 (Tex.Civ.App.), writ ref., n. r. e., as authority for the proposition that the tracing evidence is insufficient in this case, and that there is no evidence in the record to disprove tampering with and damage to the brakes. That case involved a defective Coca Cola bottle, the cause of the injury, as distinguished from the contents of the bottle. What distinguishes the case at bar from the Hobart situation centers about the effect of the potentiality for tampering regarding goods daily exposed for sale as contrasted with articles encased or contained in mechanisms or containers which afford protection from tampering or misuse. In the Hobart case, since the possibility that damage could occur with respect to articles exposed for sale by many persons who would have an opportunity and desire to handle the merchandise, we required that a claimant negate the probability of such intermediary damage. Where, however, the defect exists inside an encased mechanism or container, absent the establishment of some necessity to invade the mechanism, the inference is that the defective condition existed at the time of the manufacturer or assembly. The fact that the unit is encased protects the inference and authorizes a valid conclusion by a jury that the defect existed at the crucial time. This is not to suggest that as a matter of law the complaining party is entitled to a verdict in his favor, but only that the jury may draw an inference that the defective condition existed at the time possession and control was surrendered by the manufacturer of the product. See Prosser, The Fall of the Citadel, 50 Minn.Law Rev. 791, 846–847 and cases cited; LeBlanc v. Ford Motor Co., 346 Mass. 225, supra, 191 N.E.2d p. 305.

In view of another trial it is appropriate that we comment on the evidence excluded

by the trial court in connection with the testimony of LaRue. At the lower portion of each brake shoe there was a hole, as above noted. The trial court refused to permit LaRue to testify that General Motors used a horizontally attached spring, or that such a spring would give additional stability, or to state what the holes were for. Appellant contends that if Chrysler had provided a spring at the point provided for by the manufacturer of the brake shoes that the adjusting unit would not have become dislocated or dislodged. Chrysler contends that the evidence was not admissible because LaRue testified that the manner in which the two brake shoes were hooked together in the General Motors unit was different and the lever adjustment in the Dodge was altogether different. The able trial court in excluding the testimony stated that the witness was not qualified to express an opinion on the question of negligent design, specifically pleaded by the appellant in its common law count.

 LaRue had been a brake repairman for some thirty years, and ordinarily would be qualified to express an opinion concerning the need for additional safety by the use of the spring involved. He had gained his knowledge by experience in repairing brakes. However, the trial court has wide discretion in permitting or refusing the testimony of an alleged expert witness in connection with his qualifications, and its decision is not subject to review in the absence of a clear abuse. Texas Law of Evidence, McCormick and Ray (2d Ed.), Secs. 1400, 1401, pp. 233–237. It is doubtful that such testimony had to do with design in its ordinary sense, but we cannot hold that the trial court abused its discretion in refusing to accept testimony bearing on the use made by General Motors of the spring and its additional safety qualities under these circumstances. The differences above stated would, in our opinion, have little to do with the application of a spring through a hole in the brake shoes that were made to receive a spring. Evidence of what others do to stabilize the adjusting unit should ordinarily have been received from a qualified witness, not as establishing a standard of care, but to be considered along with all other evidence to determine whether the assembly was designed defectively, or whether the adjusting unit had become partially dislodged because of the insecurity of the brake shoes. Wigmore on Evidence, 3rd Ed., Vol. II, Sec. 461; Milner v. Huntsville Memorial Hospital, 398 S.W.2d 647 (Tex.Civ.App.), writ ref., n. r. e.; Blohm v. Cardwell Mfg. Co., 380 F.2d 341 (10th Cir., 1967); and see and compare generally 19 S.W.Law J. 43, 51.

 However, LaRue's testimony concerning the defective nature of the braking mechanism, as to the defective installation of the adjusting unit of the brakes, and as to how the adjusting unit became detached from its normal position resulting in brake failure, was clearly admissible. Especially is this true when the witness had been allowed to testify to other related matters in connection with the allegedly defective brakes. Moreover, the purpose of the holes in the brake shoes was admissible. The witness was never permitted to conclude his testimony on the latter matters. The latter testimony was tendered with respect to technical matters as to which the jury would not ordinarily have adequate knowledge as part of their ordinary experience. Taken with lawful inferences, the latter testimony tended to assist the jury and was not too inconclusive to afford a reasonable basis for a finding relating to liability under the circumstances.

For the reasons stated, the case is reversed and remanded for another trial.

SAM D. JOHNSON, Justice (concurring).

While concurring in the result reached by the majority, different reasoning for so doing dictates this opinion. The conclusive evidence in the instant record is that there was no internal tampering or work done on the encased or enclosed braking

unit in question. Further, if there was an unproven attempt to adjust the brakes, it is clear that such an attempt would not have caused the displacement of the type of damage observed in the internal parts of the encased or enclosed unit. Under such circumstances the reasoning used by the Supreme Court in McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup.), to a sealed container should be applicable to an encased or enclosed mechanical unit, and should carry the same inferences. See Markel v. Spencer, 5 A.D.2d 400, 171 N.Y. S.2d 770 (1958), affirmed without opinion, 5 N.Y.2d 958, 184 N.Y.S.2d 835, 157 N.E.2d 713 (1959); Guagliardo v. Ford Motor Co., 7 A.D.2d 472, 184 N.Y.S.2d 1012 (1929).

The Supreme Court cites with favor the American Law Institutes Restatement of the Law of Torts (2d Ed.) in adopting the doctrine of strict liability for this jurisdiction. McKisson v. Sales Affiliates, Inc., supra. The reasoning suggested in this concurring opinion is to give full effect to the doctrine.