Lavinia McCROSSIN, Appellant,

v.

HICKS CHEVROLET, INC., Appellee.

HICKS CHEVROLET, INC., Appellant,

v.

Lavinia McCROSSIN, Appellee.

GENERAL MOTORS CORPORATION,
Appellant,

v.

Lavinia McCROSSIN, Appellee.

Nos. 4337–4339.

District of Columbia Court of Appeals.

Argued Sept. 30, 1968.

Decided Jan. 8, 1969.

Glenn A. Mitchell, Washington, D. C., with whom Jacob A. Stein, Washington, D. C., was on the brief, for Lavinia McCrossin.

Charles J. Steele, Washington, D. C., with whom Whiteford, Hart, Carmody & Wilson, Washington, D. C., were on the brief, for Hicks Chevrolet, Inc.

Harold A. Sakayan, Washington, D. C., with whom James C. Gregg, Washington, D. C., was on the brief, for General Motors Corp.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

HOOD, Chief Judge:

Mrs. McCrossin, hereafter called the plaintiff, purchased a new 1962 Chevrolet Corvette on March 9, 1962 for her son Larry. About nine months later, Larry was driving the car at a speed of 55 to 60 miles per hour when he felt a slight loss of power. Shortly afterwards, he saw a "ball of fire" come over the righthand side of the windshield. He stopped, got out of the car, and saw flames shoot out from under the hood. Soon the fire so damaged the car that it had only a salvage value. Mrs. McCrossin brought this action for the value of the automobile against General Motors Corporation, the manufacturer of the car, and Hicks Chevrolet, the dealer who sold her the car. She charged each defendant with breach of implied warranty and negligence. The jury returned a verdict against both defendants on both charges. The trial court granted Hicks' motion for judgment n. o. v. on the issue of negligence, but otherwise allowed the verdict to stand.[1]

---

1. The record here does not include the charge to the jury or the rendition of the verdict by the jury but counsel at oral argument agreed that the case was submitted to the jury on the issues of implied warranty and negligence against both defendants and that the jury found against each defendant on both issues.

On this appeal both defendants argue that the evidence did not warrant submission of the case to the jury. We first consider the issue of breach of implied warranty.

Plaintiff, her son, and two other witnesses all testified that the car was in a defective condition from the time of the purchase until the fire occurred. There was ample testimony that the car, while being driven, would on occasion lose power, backfire, and emit flames from the exhaust. In addition there frequently developed the odor of raw gasoline, and the engine idled roughly and often continued to shudder and run for approximately a minute after the ignition was turned off.

Plaintiff and her son also testified to numerous complaints they made to both defendants concerning the defective condition of the car. On five occasions it was returned to Hicks for repairs, but only the last servicing, about two months prior to the fire, related to any repair to the engine. At that time Hicks supposedly checked the engine, replaced the fuel pump, and flushed the crankcase. On that occasion, Larry's brother went to Hicks for the car, but it stopped running after being driven about four blocks and had to be towed back to Hicks. The following day Larry was advised that his car was ready, and he and his cousin went to pick it up. Hick's service department was closed when they arrived. They started the car but found it could not be driven. The engine would speed up and then go off independently of the gas pedal. Larry's cousin thought the float valve in the carburetor was stuck, and he removed the air filter and top of the carburetor and unstuck the float valve. They were then able to drive the car to a gas station where it was also found that gasoline was mixed with oil in the crankcase. After the oil was changed, the car would operate, but it continued to give the same defective performance until the fire occurred.

Plaintiff's expert witness testified that if the fuel mixture in the engine's combustion chamber was too rich in gasoline, a condition he referred to as flooding, it would cause the engine to run irregularly, misfire and backfire. The flooding condition would also cause the car to continue to run after the ignition was cut off, and would cause the odor of raw gasoline and the presence of gasoline in the crankcase. The expert further testified that the flooding condition could be caused by a faulty or defective carburetor, and such condition could cause a fire. Much of his testimony was disputed by defendants' expert witnesses, but all the experts agreed that the fire occurred in the area of the carburetor and that the exact cause of the fire could not be determined.[2]

Based on a hypothetical question which described the prior operation and running condition of plaintiff's car, plaintiff's expert expressed the opinion that the carburetor was the cause of the fire and that the carburetor was in a defective condition at the time it left the factory. On cross-examination he stated that the fact the car had once been in an accident with a damaged fender, that the top of the carburetor had been removed and the float valve unstuck, that the car had been raced or abused by rapid acceleration, and that the car had been driven 8,000 miles, would not cause him to change his opinion.

In order for the plaintiff to recover on breach of implied warranty, it was necessary that she prove that the car was in a defective state at the time it was delivered by General Motors and that the defect existed at the time the car was sold to her by Hicks, and that as a result of the defect she was damaged. Picker X-Ray Corp. v. General Motors Corp., D.C.Mun.App., 185 A.2d 919 (1962). Because of the severe damage to the car caused by the fire, plaintiff was unable to offer direct proof of the defect. In such situation, she is permitted to prove the existence of the defect by

2. The carburetor was in a melted state after the fire.

circumstantial evidence. Congressional Insurance Co. v. Ford Motor Co., D.C.App., 198 A.2d 918 (1964); Simpson v. Logan Motor Co., D.C.App., 192 A.2d 122 (1963); Automobile Insurance Co. of Hartford Conn., v. Williams, D.C.Mun.App., 111 A.2d 874 (1955); Vandermark v. Ford Motor Co., 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964).

▮ From the evidence that operation of the automobile from the time of its purchase indicated numerous symptoms of a defective carburetor, including the slight loss of power immediately preceding the fire, coupled with the fact that the fire started in the area of the carburetor, plus the testimony of plaintiff's expert, we think that the jury could have reasonably concluded that the fire was more probably than not caused by a defective carburetor and found a breach of warranty by both defendants.

▮ Defendants attack the qualification of plaintiff's expert, but generally the qualifications of an expert is a question for the trial court, and we cannot on this record rule that the trial court was in error in holding the witness qualified as an expert. Plaintiff's expert was strongly contradicted by defendants' expert, but this merely presented a question for consideration by the jury. This case may be a "close" one, but even in criminal law, close cases are for the jury. Thompson v. United States, D.C. Cir., decided November 25, 1968.

▮ It is argued by defendant General Motors that its motion for a directed verdict or judgment n. o. v. should have been granted because the evidence showed an intervening cause, and because the plaintiff was contributorily negligent as a matter of law. The alleged intervening cause was the third person who removed the air filter and top of the carburetor to unstick the float valve. The question of whether such acts actively operated in producing the fire is basically one of fact. Plaintiff's expert testified that the unsticking of the float valve would not alter his opinion that the fire was caused by the original defective condition in the carburetor. We find that this issue was therefore properly for the jury. Nor do we hold that the continued use of the car for the last two months without returning it to Hicks for additional repair of the defective engine condition was contributory negligence as a matter of law. Contributory negligence and assumption of risk are valid defenses to bar an injured party's recovery for breach of warranty.[3] The evidence at trial clearly indicates that the malfunctioning of the engine only occurred occasionally. Accepting plaintiff's and her son's testimony that numerous complaints concerning the running of the car were made to defendants, the ineffectual attempted repair by Hicks on the last occasion, and Hicks' assurances that the continued running of the engine after the ignition was shut off was normal, the jury could reasonably have found no contributory negligence in the continued use of the automobile. The record before us does not reflect whether this issue was submitted to the jury. However, the question was properly for the jury's determination.

▮ General Motors also contends that it was error to allow the action to proceed against it on breach of implied warranty. It argues that because plaintiff was a resident of Maryland and the fire occurred in Maryland, the law of that State should govern, and that Maryland law requires privity of contract in implied warranty cases,[4] contrary to the rule in this jurisdiction.[5] If the present case is a true conflict of law case, the question of wheth-

3. Ferraro v. Ford Motor Co., 423 Pa. 324, 223 A.2d 746 (1966); Cintrone v. Hertz Truck Leasing & Rental Service, 45 N.J. 434, 212 A.2d 769, (1965).

4. Debbis v. Hertz Corp., 269 F.Supp. 671 (D.Md.1967); Woolley v. Uebelhor, 239 Md. 318, 211 A.2d 302 (1965).

5. Picker X-Ray Corp. v. General Motors Corp., supra.

er the District of Columbia or Maryland law is applicable is dependent on which jurisdiction has the "more substantial interest in the resolution of the issue." [6] Under that test we think clearly the District has the more substantial interest. Although the plaintiff is a resident of Maryland, she purchased the car in the District and the implied warranty arose out of the sale. The occurrence of the fire in Maryland was strictly fortuitous. It could have occurred anywhere the car was being driven. General Motors, as far as we are informed, has no closer ties with Maryland than with the District. Moreover, we incline to the view that the present case is not a true conflict of law case. The rule in the District, dispensing with the requirements of privity in implied warranty cases, is for the benefit and protection of all who buy in the District, not for residents of the District alone; and affording that protection to a Maryland resident who buys here would surely not violate any Maryland policy.[7] We find no merit to General Motors' contention that Maryland law should govern this case.

Both defendants also claim that the lower court erred in not limiting recovery for breach of warranty to the value of the carburetor. This jurisdiction allows recovery of consequential damages which were proximately caused by a breach of warranty. Rubewa Products Co. v. Watson's Quality Turkey Products, D.C.App., 242 A.2d 609 (1968); Meyers v. Antone, D.C.App., 227 A.2d 56 (1967). Based on the jury's finding, the loss of the car was proximately caused by the defective carburetor, and the amount of the verdict was proper.

In view of our holding that the case was properly submitted to the jury on the issue of breach of implied warranty as against both defendants, and it appearing that the jury found against both defendants on this issue, we find it unnecessary to consider whether the case was properly submitted to the jury on the issue of negligence or to consider the correctness of the trial court's grant of judgment n. o. v. as to Hicks on the negligence issue.[8]

Affirmed.

6. Dovell v. Arundel Supply Corp., 124 U.S.App.D.C. 89, 90, 361 F.2d 543, 544 (1966). See also Roscoe v. Roscoe, 126 U.S.App.D.C. 317, 379 F.2d 94 (1967).

7. Gaither v. Myers, D.C.Cir., 404 F.2d 216 (decided October 10, 1968).

8. Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960).