## TEXAS & P. RY. CO. v. RILEY.
### No. 6101.

Court of Civil Appeals of Texas. Texarkana.
June 30, 1944.

Rehearing Denied Dec. 7, 1944.

Carney & Carney, of Atlanta, Wheeler & Atchley, of Texarkana, and M. E. Clinton, of Dallas, for appellant.

Jones & Jones, of Marshall, and B. F. Whitworth, of Houston, for appellee.

HALL, Chief Justice.

This is a suit for damages brought by appellee as administratrix of the estate of G. J. Riley, deceased, on behalf of herself and her three minor children, aged 12, 10 and 7 years. Appellee alleged that G. J. Riley, her deceased husband and father of her minor children, on December 19, 1942, the date of his death, was employed by appellant as a member of one of its bridge and building crews; that at the time of his death, G. J. Riley was assisting the other members of the bridge crew in unloading bridge piling from a flat car on the main line of appellant's railroad; that deceased was killed by being crushed by the heavy timbers rolling off the flat car upon him. Several grounds of negligence were alleged by appellee, three of which were submitted to the jury, and these only will be discussed, which are: (A) "the car containing the piling or timber was greatly overloaded, and more timber or piling placed thereon than should have been put there in order to allow the same to be

properly handled or unloaded; (B) employees of defendant (appellant) other than deceased negligently cut or weakened the various stakes or standards holding the load on the car, to such an extent as that when the wire that deceased cut under the orders of his superior gave way, that the entire load fell in such way as to kill deceased"; and (C) "the defendant failed to furnish the deceased a reasonably safe place to work under the conditions existing." Appellant's answer consisted of a denial of all acts of negligence charged against it; affirmative allegations to the effect that Riley was an experienced workman; and that his failure to use ordinary care for his safety on the occasion of his death was the proximate cause of his death. Appellant also pleaded unavoidable accident.

At the conclusion of appellee's testimony appellant moved for an instructed verdict which was by the court denied. Appellant offered no testimony. Trial was to a jury on special issues, which resulted in a verdict convicting appellant of negligence on the three grounds set out above and awarding damages to appellee. Judgment was entered for appellee accordingly.

Appellant's first four points assert that the trial court committed reversible error in overruling its motion, timely made, for an instructed verdict. In our opinion, these points present the controlling issue on this appeal. Admittedly this cause is ruled by the Federal Employers' Liability Act.

G. J. Riley, deceased, was a member of a bridge and building crew employed by appellant. On the occasion of his death, he, with other members of the crew under the direction of one Waters, assistant foreman, were engaged in unloading a flat car of bridge piling on appellant's main line of railroad in Louisiana near the bridge or trestle in which said piling were to be used. The facts show that on the morning Riley met his death, the bridge and building crew reached the bridge before the train carrying the car of piling; that upon arrival of the train the bridge crew began the work incident to unloading the piling from the flat car; that the assistant foreman, Waters, together with other members of the crew including deceased, decided to unload the piling on the south side of the car since the load was leaning slightly to the south. The piling was held in place on the flat car by means of stakes or standards about four inches in diameter inserted in brackets or fasteners on the side of the flat car, seven on each side of the car, and fastened together by wires drawn between opposite stakes at intervals from the bottom to the top. To unload the piling it was necessary to cut out all stakes or standards on the south side of the car except the stakes at each end, these to be cut or weakened so that when the wires connecting these two stakes with the opposite stakes on the north end of the car were cut the load would roll off on the south side. This was done, leaving only the end stakes on the south side standing and these were cut or weakened and all the wires connecting the stakes were removed except the top wires connecting the weakened stakes to their opposite stakes on the other side of the car. The cutting or weakening of the stakes was done by the assistant foreman and some members of the crew other than deceased. The stakes on the north side of the car were not weakened. With the car in this condition, with only the end stakes attached by wires, ready to be unloaded, deceased together with the assistant foreman went upon the west end of the car for the purpose of cutting the west end wire. The assistant foreman did not remain on the car with deceased until the wire was cut. No one seems to know where he went or when or how he got off the car. Deceased cut the west wire with an axe and immediately all the stakes gave way, both on the north and the south sides of the car, releasing the load of piling. Instead of all the piling falling off the south side of the car as was expected, the load split and some piling fell off on the north side of the car. When this occurred, deceased either jumped or was thrown to the north side of the car, was caught by the piling and crushed to death. The car in question was loaded with 54 piling ranging in length from 30 to 45 feet, the 45-foot piling loaded at the bottom of the car, the 40-foot next, and the 30-foot on top. The car was loaded to a height of about eight feet. In order to reach and cut the west end wire it was necessary for the deceased to stand on the ends of the longer piling. None of the witnesses (all being former members of the bridge and building crew) had ever unloaded a car carrying more than 45 piling. They testified that the other loads they had observed ranged from 30 to 45 piling—only one containing as many as 45. Attached to each end of the flat car of piling in question was a box car. The railroad track where the

car was unloaded was on a dump some 8 or 10 feet high.

■ In answer to appropriate issues the jury found: (a) That the employees of appellant other than deceased negligently cut the stakes holding the load of piling on the south side of the car to such an extent as to cause the entire load to give way when deceased, Riley, cut the wire at the west end of the car, which was a proximate cause of Riley's death; (b) that appellant was negligent in overloading the car of piling which was a proximate cause of Riley's death; and (c) that appellant negligently failed to furnish deceased a reasonably safe place to' work under the conditions existing, which was a proximate cause of his death. All defensive issues were found against appellant. The important question presented is: Do the circumstances reflected by this record support the jury's findings that appellant was negligent in the respects above indicated and were either of such acts of negligence a proximate cause of deceased's, Riley's, death? In passing on the sufficiency of the circumstances to support the verdict, when challenged, we must view them in the light most favorable to appellee. Western Casualty & Surety Co. v. Mueller, Tex.Civ. App., 169 S.W.2d 223.

■ There is no direct testimony in this record to the effect that the flat car was overloaded. True, the evidence shows that it carried nine more piling than any other load theretofore handled or observed by the witnesses, yet none of them state that it was loaded beyond capacity. The car reached its destination with the load intact. It was loaded in the customary manner and the only shifting of the load observed was a slight leaning to the south, which prompted the decision of the crew to attempt to unload the car on that side. The only circumstances even suggesting that the car was overloaded was a statement of one witness that he had never observed a car loaded with more than 45 piling. This witness also testified that the number of piling loaded on the cars which he had happened to unload corresponded to the number needed on the particular bridge job where they were unloaded, and that such was the case with the car of piling in question here. The evidence, in our opinion, falls short of establishing negligence on the part of appellant in overloading the car on the occasion of Riley's death.

■ We shall next consider the sufficiency of the evidence to support the jury's finding to the effect "that the stakes holding the load of piling on the south side of the car were negligently cut to such extent by employees of the defendant (appellant), other than deceased, so as to cause the entire load of piling to give way when the deceased, Riley, cut the wire at the west end of the car." We think it is deducible from the evidence that the assistant foreman, together with some member of the bridge crew, other than the deceased, weakened the stake at the west end and south side of the flat car by sawing it partially in two "as they had customarily weakened them." It appears from the record also that at the time deceased cut the wire on the west end of the car all the stakes on the south side had been removed except the stake at the west end and the one at the east end, and that all the wires connecting the stakes had been cut or removed, except the top wires attached to the end stakes. As heretofore stated, the car was loaded with 54 piling to a height of eight feet. This was the picture at the time deceased cut the west wire releasing the load of piling which caused his death. This was the largest load of piling handled by the bridge and building crew and was the only load ever observed by them that separated or split, falling to both sides when the first end wire was severed. On one other occasion a load of piling had separated and fallen to both sides after both end wires had been severed. Are the circumstances detailed sufficient to sustain the jury's finding that appellant was negligent in weakening the west end stake on the south side of the car so that it "gave way when the deceased, Riley, cut the wire at the west end of the car"? The testimony shows that the stakes were cut in the same manner that "they customarily weakened them." Riley's death was caused by the piling falling off the north or wrong side of the car where none of the stakes had been weakened. As before stated, only on one occasion had a load of piling split and fallen off on both sides of the car, and that after both end wires had been severed, and that car contained 45 piling. In this instance when deceased cut the west end wire, the east end wire snapped and all the stakes broke, causing the piling to fall on both sides, 36 to the south and 18 to the north. One witness states that it happened like "the snap of your finger." In

City of Dallas v. Maxwell, Tex.Com.App., 248 S.W. 667, 670, 27 A.L.R. 927, it is said: "In this state it is now a settled doctrine that anticipation of consequences is a necessary element in determining not only whether a particular act or omission is actionably negligent, but also whether the injury complained of is proximately caused by such act or omission" (citing cases). Under all the circumstances here, bearing in mind the extra number of piling loaded on the car with the end stakes on the south side of said car cut or weakened as they had been customarily weakened on smaller loads, could appellant or its agents have reasonably foreseen or anticipated such occurrence or some similar occurrence which would or might result in injury to one of its employees? After careful study of this record, we have concluded that it could.

What caused the load to slip? The answer immediately suggests itself that it was caused by cutting the end stakes on the south side of this heavily loaded car in the same manner as was customarily done on the other cars handled by the crew carrying much smaller loads of piling. Under all the circumstances detailed above, the jury, we think, was warranted in finding that this act was negligence and was a proximate cause of Riley's death. Moreover, these circumstances are materially strengthened by the failure of appellant to offer any explanation of the occurrence resulting in Riley's death which would excuse it. In the recent case of Roberts v. Texas & P. R. Co., 180 S.W.2d 330, 332, not yet reported [in State reports], the Commission of Appeals, in discussing pertinent questions of law applicable here, has this to say:

"In both the McCray case (McCray v. Galveston, H. & S. A. R. Co., 89 Tex. 168, 34 S.W. 95) and the present case plaintiffs relied upon specific acts of negligence. As shown by the opinion of the Court of Civil Appeals in the McCray case, 32 S.W. 548, plaintiff alleged that the train was being run at a negligent rate of speed and that the rails directly in front of the car on which deceased was riding in performance of his duty were not securely fastened and that one of the rails fell and killed deceased and that his death was caused by the fast rate of speed *and the negligent way in which the rail was placed and held on the car.'* Specific acts of negligence were there alleged and the decision of the case by this Court did not rest upon the doctrine of res ipsa loquitur, but, as pointed out by Chief Justice Phillips in Missouri, K. & T. R. Co. v. Cassady [108 Tex. 61, 184 S.W. 180], rested upon the 'rule * * * announced in McCray v. (Galveston, H. & S. A.) R. Co., that *circumstances of a particular accident may themselves furnish proof of negligence.'* The McCray case rule referred to is incorporated in the following excerpt from the opinion * * *:

" ' " * * * It is not that in every case negligence can be assumed from the mere fact of the accident and the injury, but in these cases the surrounding circumstances, which are necessarily brought into view by showing how the accident occurred, contained, without further proof, sufficient evidence of the defendant's duty and of his negligence to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer." * * * *It was the duty of the railroad company to place the cars in the hands of its employes in a condition reasonably safe to be handled by them in the course of transportation.* If the car was not in such condition, either from defects in the car itself or on account of improperly loading the rails thereon, and the injury to the deceased resulted from such unsafe condition, the defendant would be liable for damages occasioned by reason of the injury. This car was in the keeping and under the control of the defendant. The loading of the rails was done by it or by its servants; *and if the accident was such that it would not probably have occurred, in the ordinary course of transportation, if the car had been properly loaded, the circumstances attending the accident would furnish sufficient evidence to authorize a verdict for the plaintiffs if no explanation were given by the defendant.* If there be an explanation which would excuse the defendant, it has the means of making the proof, and should do so; and the plaintiffs should not be required to negative every circumstance which might possibly arise whereby the accident might have occurred. The district court * * * should have submitted the case to the jury, under proper instructions, to determine from the evidence whether or not the defendant had been guilty of negligence, and whether that negligence caused the death of Jesse McCray.' (All italics in this opinion ours.)"

Thus it would seem from the above recent expression of our Supreme Court that there are cases where the res ipsa loquitur rule of evidence applies even though the action be based upon allegations of specific acts of negligence. The method and manner of weakening stakes employed here might have been reasonably safe when applied to the character and size of loads of piling theretofore handled by the crew, but when employed on a car loaded as the car in question it would raise an issue of fact as to whether such act amounted to negligence.

The case of Emmons v. Texas & P. R. Co., 149 S.W.2d 167, 170, by this court, is not in point. That case turned on the proposition that: "If the injury may have resulted from one of two causes, for one of which, and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result; and, if the evidence leaves it to conjecture, the plaintiff must fail in his action."

After much study we have concluded that the circumstances presented by this record, together with the failure of appellant to offer any explanation concerning the death of Riley which would excuse it, are sufficient to support the verdict of the jury that the employees of appellant other than deceased negligently cut the stakes on the south side of the car which held the load of piling to such extent as to cause the carload of piling to give way when the deceased, Riley, cut the wire at the west end of the car, and that such negligent act was the proximate cause of Riley's death.

■ The record, in our opinion, also reveals circumstances raising an issue of fact as to whether appellant negligently failed to furnish deceased a reasonably safe place to work under the conditions and on the occasion when he met his death. The record is conclusive that the car was unloaded in a manner similarly employed by the crew in unloading other cars of piling used by them in repairing and building bridges, all of which carried much smaller loads than the car in question. It was necessary for some member in unloading the car to go upon same and cut the wires attached to the weakened stakes. This method of unloading, although not entirely without danger, under the circumstances here, considering the size of the load and the manner in which the stakes were weakened, became extra hazardous to an employee situated as

was Riley. The negligent act or omission of appellant in this connection was a "substantial factor" contributing to the death of Riley.

■■ Appellant complains of the amount of damages assessed by the jury and asserts that it is excessive and shows "that the jury was prompted by prejudice, passion, malice and motives other than their desire to award fair and reasonable damages." The facts in this connection show that Riley was 35 years of age at the time of his death and was earning about $125 per month in addition to his board and lodging. The major portion of his earnings went to the support of his family. Riley was a sober, home-loving man and took great pride in his family. His wife testified that: "He (Riley) wanted to give them (his children) the best that he could, educate them, and always wanted them to go to Sunday School and Church." Mrs. Riley, the widow, was 33 years of age and the three minor children were 12, 10 and 7, the older two being girls and the youngest a boy. The amount assessed by the jury was $30,000, apportioned $15,000 to Mrs. Riley and $5,000 to each of the minor children. Under all the circumstances here we are not prepared to say that the damages assessed are excessive. Certainly there is no fact in this record to show that the jury was actuated by any ulterior motive in making this assessment. Appellee's measure of damages was great and it must be remembered that it did not depend solely upon monetary contributions by the deceased husband and father. As ably stated by the late Justice Hodges of this Court in Hines, Director General, v. Mills, 218 S.W. 777, 780, writ dismissed:

"The argument is made that $40,000 loaned at 8 per cent. interest would annually yield a return greater than the entire income Mills was receiving at the time of his death, or had any prospect of receiving by virtue of future promotion. That is true; and, if the income lost by the death of Mills furnished the sole measure of the damages which his wife and children should recover in this suit, the argument would have much force. While there can be no recovery in cases of this character for the mere loss of companionship or for the mental anguish suffered by the wife and children on account of the death of the husband and father, there may be a recovery for the value of the services which the deceased might and would have ren-

dered in training and educating his children. It is always difficult to estimate in money the value of such services. The law has intrusted that duty to the juries, and this court does not feel warranted in disturbing an estimate which does not plainly appear to be exorbitant."

See also Texas & N. O. R. Co. v. Harrington, Tex.Civ.App., 241 S.W. 250; Baker v. Fields, Tex.Civ.App., 236 S.W. 170; Beaumont, S. L. & W. R. Co. v. Sterling, Tex.Civ.App., 260 S.W. 320; Gulf States Utilities Co. v. Moore, Tex.Civ.App., 73 S.W.2d 941; Gulf, C. & S. F. R. Co. v. Carpenter, Tex.Civ.App., 201 S.W. 270; Burlington-Rock Island R. Co. v. Davis, Tex.Civ.App., 123 S.W.2d 1002.

We have carefully examined all other points brought forward by appellant; they are thought to be without merit and are overruled.

The judgment of the trial court is affirmed.

WILLIAMS, J., concurring.

HARVEY, J., not sitting.