**J. WEINGARTEN, INC., Appellant,**

v.

**Delfina OBIEDIO, Appellee.**

**No. 16312.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Oct. 10, 1974.

Second Motion on Rehearing Denied
Nov. 14, 1974.

Vinson, Elkins, Searls, Connally & Smith, Raybourne Thompson, Jr., Robert A. Rowland, III, Houston, for appellant.

Steve Elder, Houston, for appellee.

ON MOTION FOR REHEARING

EVANS, Justice.

Mrs. Delfina Obiedio recovered judgment on a jury verdict against Weingarten in the amount of $6,500.00 as damages for injury sustained in one of Weingarten's retail grocery stores. In our original opinion we affirmed the judgment of the trial court. On appellant's motion for rehearing we remain of the opinion that the trial court's judgment must be affirmed but there are certain matters covered in our original opinion which we have determined

should be clarified. We, accordingly, withdraw our original opinion and this opinion is substituted therefor.

Mrs. Delfina Obiedio fell, suffering a broken wrist, when she pulled on a shopping cart in Weingarten's No. 14 grocery store. Mrs. Obiedio testified that when she pulled on the shopping cart basket, the whole row of carts (called "bascarts") came toward her causing her to fall on her right hand. The jury found that the bascarts were bent and defective; that this was a dangerous condition maintained by Weingarten's which knew or should have known of the condition; and that Weingarten's was negligent in failing to repair or replace the bascarts. The jury also answered the causation issue in favor of Mrs. Obiedio and refused to find that she had failed to keep a proper lookout or that she had pulled on the bascart in such a manner as would not have been done by a person in the exercise of ordinary care.

In 14 points of error Weingarten's attacks the legal and factual sufficiency of the evidence on questions of primary negligence and proximate cause.

Basically Weingarten's position is that there is no evidence in the record from which the jury could properly have inferred that the particular bascarts involved in Mrs. Obiedio's accident were bent and defective.

Mr. Obiedio testified that he drove his wife to the Weingarten's No. 14 store on the evening in question so that she could buy groceries. They lived about four or five blocks from the store and bought groceries there every week. Mr. Obiedio usually stayed in the car while his wife shopped and when she had completed her shopping he would go in and help her with the groceries. Shortly after Mrs. Obiedio went into the store on the day in question, a lady came running out and told Mr. Obiedio that his wife had fallen down.

Mrs. Obiedio testified that she walked into the store and reached for a bascart with her right hand. She said the baskets were of the type that the basket flips up and the other basket moves in behind it; that there was a row of approximately 50 bascarts nested together. She said when she pulled on the bascart the whole row of bascarts came toward her causing her to fall. She said there must have been about five or six bascarts out of the big stack that came toward her and they caused her to lose her balance, pushing her to the floor. She said she made no inspection of the baskets and just walked up and pulled on the first basket in line. She said when she pulled on the basket all the bascarts came toward her and threw her to the floor. She said: "I pull light but they were all stuck together." She said she had had a basket stick before, but did not know that "the whole thing would come toward me."

Weingarten argues that the record is silent as to any direct evidence of the condition of the bascarts in question at the time of the occurrence. It contends that Mrs. Obiedio's testimony shows she did not inspect or even observe the particular bascarts which were involved in her injury and that her testimony is contradictory as to the extent of her observation on that date. Weingarten further contends the trial court erred in permitting Mrs. Obiedio to state, over objection, that she had observed the condition of the bascarts, after earlier testifying that she had not made an observation about the bascarts on the date that she was injured.

Mrs. Obiedio testified that when she pulled upon the bascart it stuck together with five or six others and that all came together at her in a bunch, causing her to fall to the floor. Weingarten's shop dispatcher and maintenance man testified that it was "very, very possible" that several bascarts nested in a row would stick together if they were bent. Weingarten's property accountant testified that the bascarts were repaired in their shop so that they would be "easy to push in the store." He admitted knowledge that the purpose of

such repair was to avoid having the bascarts stick together and come toward a customer in a bunch when one bascart was pulled loose.

■ The circumstances in which an injury occurred may sometimes afford proof of the act or condition which caused the injury. Gulf Pipe Line Co. v. Bailey, 40 S.W.2d 938, 941 (Tex.Civ.App., Texarkana 1931, writ dism'd); Washington v. Missouri, K. & T. Ry. Co. of Texas, 90 Tex. 314, 38 S.W. 764 (1897). The jury was at liberty to conclude from Mrs. Obiedio's testimony describing the manner in which the accident occurred and the testimony of Weingarten's employees, which tended to show how the occurrence could likely have happened, that the injury was caused by the bent and defective condition of one or more of the bascarts in question.

■ That there might be more than one reason why the bascarts would stick and come together in a bunch does not necessitate a conclusion that the evidence was legally insufficient to support the jury's verdict. Washington v. Missouri, K. & T. Ry. Company of Texas, supra. Mrs. Obiedio was not required to exclude every other possible cause of the occurrence. Burlington-Rock Island Railway Company v. Ellison, 140 Tex. 353, 167 S.W.2d 723 (1943).

"[I]f a cause is shown that might produce an event and it being shown that an event of that particular character did occur, it may be inferred that the known possibility produced the result. Plaintiff is not required to exclude an appreciable chance that the event might have occurred in some other way. Expressed otherwise, a conclusion of causal connection may be inferred by a balance of probabilities." Collier v. Hill & Hill Exterminators, 322 S.W.2d 329, 337 (Tex. Civ.App., Houston [1st Dist.] 1959, n. w. h.).

Weingarten managed the store in question and furnished the bascarts to its customers for their use and convenience while shopping at its store. It assumed exclusive responsibility for the maintenance and repair of its bascarts and if the occurrence was the result of some cause other than their defective condition, Weingarten had the means and opportunity to ascertain that fact and make appropriate explanation. McCray v. Galveston, H. & S. A. R. Co., 89 Tex. 168, 34 S.W. 95 (1896); Roberts v. Texas & Pacific Railway Company, 142 Tex. 550, 180 S.W.2d 330 (1944); Texas & Pacific Railway Company v. Riley, 183 S.W.2d 991 (Tex.Civ.App., Texarkana 1944, writ ref.). There is no suggestion in the record as to any cause of the accident other than that offered by Weingarten's employees which tended to show the cause to have been the defective condition of one or more of the bascarts.

■ In addition to the evidence discussed above as to the circumstances surrounding the accident, the jury heard testimony from which they could have concluded that the bascarts in Weingarten's No. 14 store were generally in bad condition and needed repair at the time of Mrs. Obiedio's injury. Mrs. Obiedio's husband testified that he had seen bascarts left outside the store, sometimes in the rain or lying on their side. Mrs. Matta, an acquaintance of the Obiedios, testified she had been shopping in that store for twenty years and that she used to do her weekend shopping there and had observed the equipment used in the store. Her testimony indicates that a short time prior to the occurrence in question she had had the same trouble as Mrs. Obiedio and she testified that the bascarts in the store needed "fixing up." This evidence was sufficiently relevant as to time and similarity of circumstance as to have some probative value in determining the condition of the bascarts in the store at the time of Mrs. Obiedio's injury. Team v. Texas & Pacific Railway Company, 199 S.W.2d 274 (Tex.Civ.App., Ft. Worth 1947, ref. n. r. e.); Bonner v. Mercantile National Bank of Dallas, 203 S.W. 2d 780 (Tex.Civ.App., Waco 1947, ref. n. r. e.). It tended to show not only the defec-

tive condition of the bascarts in the store at the time of the occurrence but also that Weingarten knew or should have known of such condition at that time. City of Belton v. Turner, 27 S.W. 831 (Tex.Civ.App.1894, n. w. h.); Ft. Worth & D. C. Ry. Co. v. Wilson, 3 Tex.Civ.App. 583, 24 S.W. 686 (1893, rev'd other grounds 85 Tex. 516, 22 S.W. 578); S. H. Kress & Co. v. Selph, 250 S.W.2d 883, 890 (Tex.Civ.App., Beaumont 1952, writ ref. n. r. e.).

■ The circumstantial proof in this case established more than mere neutral circumstances of control and management and tended to affirmatively establish the bent and defective condition of the bascarts. See Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659, 664 (1935). In our opinion, it raised more than a mere surmise or suspicion of negligence. We hold that the jury could properly have concluded from the evidence that the bascarts in question were bent and defective and that Mrs. Obiedio's injury was proximately caused by Weingarten's negligent failure to repair or replace such bascarts. J. Weingarten, Inc. v. Brockman, 134 Tex. 451, 135 S.W.2d 698 (1940); Safeway Stores, Inc. v. Bozeman, 394 S.W.2d 532, 538 (Tex.Civ.App., Tyler 1965, writ ref. n. r. e.).

■ We are further of the opinion that Mrs. Obiedio's testimony as to the condition of the bascarts involved in her injury, while contradictory in certain instances, was properly presented to the jury for such weight as it chose to give it. The most pertinent portion of her testimony is set forth below:

"Q. At the time you were in the store on the day that you were injured, Mrs. Obiedio, did you make any observation about the shopping carts?

"A. No.
" . . . .

"Q. Did you notice whether any of them were—did you notice any-

thing about the state of repair about the—

(Objection—no ruling)

"Q. Did you make any observation about the condition of the shopping carts when you were in there?

(Objection that the question was repetitious—overruled)

"Q. Go ahead and answer the question, please.

"A. Well, I never had seen the baskets being repaired or nothing.

(Objection sustained)

"Q. I am not asking you whether you ever saw them repaired. I am asking you, did you see the condition of them when you went into the store?

"A. Yes. They looked pretty old already.

"Q. Did any of these appear rusty?

"A. Yes.

"Q. Did any of them appear to be bent?

"A. Yes, "

■ In her subsequent testimony, Mrs. Obiedio indicated that she had looked at the row of baskets before reaching out for one; that she had looked at the baskets but did not see how many baskets there were in the row; that she had made no inspection of the baskets and had not looked at the baskets after she fell to the floor, and that she did not notice how old the baskets were at the date of her injury but that she knew they were pretty old in that store. On redirect examination, Mrs. Obiedio gave the following testimony:

"Q. Mrs. Obiedio, for the sake of clarification you are not here to tell the jury you actually bent down and made a close inspection of those baskets, are you?

"A. That is right.

"Q. But at the same time you are not here to try to leave the impression with the jury that you just walked in there and reached around without even looking are you?

"A. No, sir."

A review of the record indicates the trial court may have determined that Mrs. Obiedio had some difficulty, perhaps due to her age or language, in understanding the nature of the questions posed to her by counsel. The contradictions and inconsistencies appear entirely within her testimony and it was a matter for the jury to determine the weight to be given it. Robinson v. Ashner, 364 S.W.2d 223 (Tex.Sup. 1963); 3 McDonald, Texas Civil Practice § 11.28.7, pp. 252–254 (1970). Under the record before us we cannot say the trial court abused its discretion in permitting counsel to ask repetitious questions of Mrs. Obiedio and to permit her to retract or explain unfavorable testimony previously given. Equitable Life Assur. Soc. v. Maverick, 78 S.W. 560, 561 (Tex.Civ.App.1904); 3 McDonald, Texas Civil Practice § 11.28.-7, p. 254 (1970).

For the reasons stated we overrule appellant's Points of Error 1 through 6, 13 and 14.

In its remaining points, Weingarten argues that the evidence is factually insufficient to support the jury's verdict because the jury's findings are contrary to the weight of the evidence. Weingarten offered proof that it had a systematic plan of repair and replacement of bascarts at its 90 stores. Its property accountant testified that Weingarten maintained a repair shop to repair its bascarts because it realized the danger to its customers if its bascarts were not maintained in a good state of repair. Its business records indicated that fifty new bascarts had been assigned to its No. 14 store some eighteen months prior to the date of Mrs. Obiedio's injury, but there was no showing that such bascarts had ac-

tually been delivered to or that old bascarts had been repaired at its No. 14 store. Weingarten's shop dispatcher and maintenance employee testified that under its maintenance and repair program its stores in the Houston area were inspected and its bascarts repaired every 45 days. He testified that the No. 14 store was a high loss store and that according to Weingarten's repair schedule, it would bring baskets to such store every 45 to 90 days. The testimony of the witnesses called on behalf of Mrs. Obiedio, in our opinion, raised a fact issue as to whether the bascarts in the No. 14 store had been repaired and replaced. The credibility and weight to be given the testimony of the witnesses was for the jury, and the evidence was factually sufficient to support the jury's findings. We overrule Weingarten's Points 7 through 12.

Appellant's motion for rehearing is overruled.

Judgment rendered and original opinion filed August 22, 1974. Motion for rehearing overruled, original opinion withdrawn and substitute opinion filed October 10, 1974.