**CMH HOMES, INC. and CMH Homes, Inc. d/b/a Luv Homes, Appellants,**

v.

**Kirk DAENEN, Appellee.**

No. 09–97–055 CV.

Court of Appeals of Texas, Beaumont.

Submitted May 21, 1998.

Decided July 9, 1998.

Rehearing Overruled July 29, 1998.

---

Michael W. Eady, Brown, McCarroll & Oaks Harline, Austin, William H. Luck, Bellaire, Douglas W. Alexander, Austin, for appellant.

Michael E. St. John, San Antonio, Richard P. Hogan, Jr., Holman, Hogan, Dubose & Townsend, Houston, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

In this premises liability case, appellee Kirk Daenen filed suit against appellants CMH Homes, Inc. and CMH Homes, Inc. d/b/a Luv Homes, for back injuries allegedly sustained on appellants' premises while appellee was making a delivery to appellants' storage trailer located in Tomball, Harris County, Texas. The case was submitted to the jury as a premises liability case. The jury, in answers to Question No. 1, found that CMH was negligent and that such negligence caused appellee's injuries. In answer to Question No. 3, the jury awarded damages in the amount of $853, 278. Based on the jury's findings, judgment was rendered in favor of Appellee and against appellants. Appellants appeal that judgment.

Factually, Mr. Daenen was a truck driver for Blevins Incorporated. Mr. Daenen's job responsibility was that of delivering mobile home parts on a route that covered southern Mississippi, southern Louisiana, and portions of east Texas. Mr. Daenen made a delivery to Luv Homes in Tomball, Texas, sometime between 4:45 to 5:00 on the afternoon of March 25, 1993. Mr. Daenen had made deliveries to this particular location before. The shed to which Mr. Daenen made deliveries, was located in the rear of appellants' premises in Tomball. Other drivers made deliveries to this same trailer, which was referred to as the "supply shed." This shed had a single door through which supplies were loaded and unloaded. Steps were located in front of the trailer or supply shed consisting of three steps and a platform.

Mr. Daenen testified that on the afternoon of March 25, 1993, he drove to the back of the Tomball location and backed his truck toward the door of the supply shed as he had done on other occasions. This was to be Mr. Daenen's last delivery of the day following

multiple stops as he worked his way from Baytown, through Houston, then to Tomball. Mr. Daenen was driving a bobtail truck measuring approximately 36–38 feet long. As appellee had done on previous occasions, he backed the truck toward the supply shed until the rear of the truck covered the bottom two or three steps which would allow appellee to step out of the back of the truck onto the top step. Different delivery drivers applied different techniques in backing their vehicle to the subject steps such as backing far enough to allow them to step directly from the back of the truck into the shed. The technique that Mr. Daenen employed required him to step down from the back of the truck onto the top step, a distance of approximately two and one-half feet, "a pretty good stride." Though Mr. Daenen's bobtail truck was equipped with a hydraulic lift, Daenen testified that the use of same would be "inconvenient." [1]

On the occasion in question, Mr. Daenen was delivering anchor straps to appellants' premises which were contained in boxes weighing approximately 70 pounds. While Mr. Daenen was unloading the second box of straps, he stepped from the back of the truck down to the top step, and according to Mr. Daenen, when he placed his right foot onto the step, it swayed from side to side "a pretty good bit." According to Daenen, it was, "just enough to where I felt the pain [in my back] and immediately dropped the box." Mr. Daenen did not fall as a result of this accident and testified that he merely lost his balance when the steps swayed. There were no witnesses to the alleged incident.

Mr. Daenen continued to unload the remainder of the supplies into the storage shed. Upon completion of this task, Mr. Daenen went to the front office of appellants and dropped off the paperwork to an employee there, however made no mention that he had injured his back. Furthermore, Mr. Daenen did not report to appellants that he had experienced the steps swaying.[2] Appel-

1. In Jury Question No. 1, the jury determined that Mr. Daenen was not negligent on the occasion in question.

2. Though appellants contend by brief that Mr. Daenen made no formal complaint against CMH until approximately one year following the incident, the record reflects that Mr. Daenen received his injury near the end of one working

lants contend by brief that by the time Daenen made his formal complaint to appellants, the steps in question had long since been replaced and the sales manager had no detailed recollection of same. According to the record, appellee sustained his injury on March 25, 1993, and in April 1993 the steps had been replaced with metal steps.

It was well known to appellants that from time to time the steps leading to the storage shed would need replacement or repair. On occasion, a truck would back into the steps and appellants would have to repair or discard same. On other occasions, the steps would develop movement by simply wearing out in the normal course of use. Appellants' knowledge of potential damage to the steps by trucks backing into same, and that the steps would become unstable through the normal course of use, is made clear in that two employees, Isiahs Flores and Ulysses Gonzales, appellants' employees, were assigned to replace or repair the steps as the need arose. Mr. Flores testified of appellants use of wooden steps and that after 12–15 months they would start moving. Flores testified that appellants now use metal steps, and they do not move. Mr. Gonzales confirmed Mr. Flores' testimony adding that occasionally the steps would have to be replaced because trucks would damage them.

According to appellants, the condition of the steps was regularly monitored. It is appellants' primary contention that Mr. Daenen produced no evidence at trial that anyone employed by appellants had actual knowledge of the unstable nature of the steps prior to the incident in question. Appellants contend that appellee failed to prove either actual or constructive knowledge on the part of appellants as to the purported dangerous condition. Appellants' motion for directed verdict was overruled by the trial court. Appellants renewed this complaint by objection to the court's charge, such objection also being overruled. Appellants renewed its complaint again by motion for judgment non obstante veredicto.

Appellants bring two points of error which basically contend that the trial court erred in denying appellants' motion for judgment notwithstanding the verdict and motion for new trial, because there is no evidence or alternatively insufficient evidence to support the jury's finding that appellants' negligence proximately caused Mr. Daenen's injury; and that the trial court erred in denying appellants' motion to transfer venue. We shall address appellants' venue point first.

## VENUE

Mr. Daenen's trial pleadings alleged that venue was proper in Montgomery County, Texas, for two reasons: (1) the incident in question occurred in whole or in part in Montgomery County, Texas, and (2) CMH was a foreign corporation with agents and/or representatives in Montgomery County, Texas. CMH moved to transfer venue to Harris County, Texas, on grounds that the alleged slip and fall in fact occurred in Tomball, which is located in Harris, not Montgomery, County. Appellants supported its motion to transfer venue by affidavit which basically stated:

> CMH Homes, Inc. has a sales office in Conroe, Texas, but individuals located in Conroe, are employees, and not agents or representatives of CMH Homes, Inc.

■ We take our instructions from *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex.1993) that, "[I]f there is any probative evidence in the entire record ... that venue was proper in the county where judgment was rendered, the appellate court must uphold the trial court's determination...." The appellate court should defer to the trial court's determination "even if the preponderance of the evidence is to the contrary." *Id.* Moreover, appellate courts should "view the record in the light most favorable to the trial court's ruling." *Id.*

■ A review of the facts show that Mr. Gary Hayes was the manager of the CMH Conroe Sales Center. Mr. Hayes has the

day, and reported his injury to his office early the next morning. Further, Mr. Daenen filled out a written report of his injury soon thereafter. Daenen's supervisor testified that he called CMH

within a month after the accident, and reported that Mr. Daenen was injured because of unstable steps on the CMH premises.

power and discretion to hire or fire all employees at the Conroe Sales Center. Hayes actually hired five of the six present employees. Mr. Hayes also has the power to hire contractors to perform repair services at the sales center office. In this regard, Hayes has the discretion to select any contractor he wishes. To do so, Mr. Hayes does not have to inform the corporate office that repairs are needed. Mr. Hayes determines which repair people to hire, gives them approval to start work, issues a purchase order to cover the work, and tells the corporate office to pay. Further, Mr. Hayes has the discretionary power to hire any trucking company he desires to deliver the mobile homes he sells and to pick-up the trade-ins he accepts. Mr. Hayes has complete discretion and authority to decide that warranty work is needed and to hire contractors to do so, without having to inform the corporate office that repairs are needed.

Appellants contend that under TEX. CIV. PRAC. & REM.CODE ANN. § 15.037 (Vernon 1986),[3] none of those persons employed at the Conroe Center are "agents or representatives" as required by statute. In support of this contention, appellants rely on *Ford Motor Co. v. Miles*, 967 S.W.2d 377, 41 Tex. Sup.Ct. J. 562, 566 (March 19, 1998), which determined that the presence of a Ford dealership in the county of suit was insufficient to establish venue against Ford. We do not view *Ford* as controlling in the present case due to dissimilarity of established facts. In *Ford*, the question was whether a separately incorporated retailer of Ford products had the power and discretion to bind the manufacturer. It is clear under *Ford* that the retailer did not possess the broad powers and discretion to act for the corporation. *Id.* at 380–383. Not so in the present case. Manager, Gary Hayes of the Conroe Sales Center, had the power and discretion to hire and fire employees at the Conroe Center. Hayes

also had the power to bind appellee in contractual matters, such as hiring contractors, hiring trucking companies, and selecting contractors to do warranty work on the mobile homes.

We believe that the present case falls squarely within the *Ruiz v. Conoco, Inc.*, intent. We affirm the district court's venue determination and overrule appellants' point of error two.

## PREMISES LIABILITY

Though appellants through point of error one contend for legal sufficiency review and alternatively factual sufficiency, appellants have by brief recognized that the evidence sufficiently supports the fact that the steps in question were unstable and "swayed" when Mr. Daenen stepped onto them. Further, appellants recognize that the evidence supports the conclusion that the unstable condition of the steps constituted a dangerous condition within the meaning of the second element of the *Keetch* test. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992).[4]

■ Thus, we view appellants' point of error one as a contention that, as a matter of law, Mr. Daenen failed to establish that appellants had actual or constructive knowledge of the dangerous condition of the steps prior to Mr. Daenen's use of same. Therefore, appellants, not having the burden of proof, compels that we consider only the evidence and reasonable inferences that tend to support the finding, disregarding all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 593 (Tex.1986); *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985). In this appeal, it is appellants' burden to demonstrate that no evidence supports the adverse

3. Act of June 16, 1987, 70th Leg., 1st C.S., ch. 4, § 1, 1987 Tex. Gen. Laws 52, 53, *repealed by* Act of May 18, 1995, 74th Leg., R.S., ch. 138, § 10, 1995 Tex. Gen. Laws 978, 981.

4. By brief appellants represent: "First, this Court is essentially bound to credit Daenen's testimony that the steps in question were unstable and 'swayed' when he stepped on them, even though there was no other witness to the incident

and Daenen's testimony was uncorroborated. Second, this Court is also probably bound to conclude that the unstable condition of the steps, to which Daenen testified, constituted a dangerous condition within the meaning of the second element of the *Keetch* test. *Keetch*, 845 S.W.2d at 264.('(2) That the condition posed an unreasonable risk of harm')."

finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983).

*Motel 6 G.P., Inc. v. Lopez,* 929 S.W.2d 1 (Tex.1996), holds that a landowner owes invitees a duty to exercise ordinary care to protect them from not only those risks of which the owner is actually aware, but also those risks of which the owner should be aware after reasonable inspection. *Id.* at 3. *See also Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983), for the proposition that, "an occupier's liability to an invitee depends on whether he acted reasonably in light of what he knew or should have known about the risks accompanying a premises condition, not on whether a specific set of facts or a specific breach of duty is established." *Id.*

Appellants are here contending that the present facts call for analysis identical to that required in slip and fall cases. Especially, appellants highlight the recent case of *Wal–Mart Stores, Inc. v. Gonzalez,* 41 Tex. Sup. Ct. J. 811, 813 (May 8, 1998), which emphasizes the harsh reality of the "timing" rule, i.e., that plaintiff's evidence failed to show that defendants had been aware of the dangerous condition for a sufficient length of time to have corrected same.

■ This is not a slip and fall case. Though all slip and fall cases may well be premises liability cases, the contrary is not and should not be the case. There exist those circumstances involving premises liability wherein a mundane application of the strict slip and fall standards will create unjust results, our present case being a prime example. Here, appellants were directly responsible for placing the instrumentality in use; directly responsible for maintaining and monitoring the safe use and stability of same; knowing that from time to time the steps in question would become unstable to the extent of having to be disposed of; and knowing that the steps in question were used or intended to be used by invitees making deliveries to appellants' premises. Are appellants now to escape responsibility simply because of appellee's impossible burden of showing that appellants had actual or constructive notice that the steps were unstable *at the moment* appellee used same for their intend-

ed purpose? The law, hopefully, is designed by reasonable people, for reasonable people, and should be reasonably applied. It becomes unreasonable, under the present facts to apply the "time notice" rule set forth in *Gonzalez.*

## ACTUAL OR CONSTRUCTIVE KNOWLEDGE

■ When an occupier has actual or constructive knowledge of any condition on the premises that poses an unreasonable risk of harm to invitees, he has a duty to take whatever action is reasonably prudent under the circumstances to reduce or to eliminate the unreasonable risks from that condition. *Corbin,* 648 S.W.2d at 295. The evidence in our case clearly establishes that appellants had actual knowledge that the steps would, from time to time, become weak and unstable. Appellants had constructive knowledge that such unstable condition could happen at any moment in that any truck preceding appellee's arrival upon the premises, could have struck the steps creating an unstable condition. Appellants had actual knowledge that invitees, using the subject steps would, from time to time, carry heavy loads while using such steps.

The present case is distinguishable from normal slip and fall cases, especially *Gonzalez,* on at least three different levels. First, the source of the dangerous condition is distinguishable. In *Gonzalez,* an otherwise safe premises was made unsafe by an outside, fortuitous event, i.e., someone spilling macaroni salad on the floor. *Gonzalez* at 936–37. By contrast, here there was an inherently unsafe condition created through appellants' choice and use of replaceable and unstable stairs. Second, *Gonzalez* differs in its evidentiary review. *Gonzalez* analyzes equal inferences of proof about the length of time a dangerous condition, caused by a fortuitous outside force, existed on the premises. *Id.* This circumstantial evidence had to be analyzed to establish the defendant's constructive knowledge. By contrast, here, there is no need to weigh equal inferences. Clearly, the owner here knew about and chose the stairs as the method of ingress and egress to the building. It is not "just as likely" that

the instability, which the·owner's employees admitted to, appeared only immediately before Mr. Daenen's accident. Third, the application of constructive knowledge differs. In *Gonzalez*, the length of time a dangerous condition has existed is used as a substitute for constructive knowledge because an owner must have had an opportunity to discover an outside act that produced the dangerous condition. *Id.* at 937–38. In contrast, here there is no need for time-focused analysis, because the owner knows of and admits to the instability of the stairs. In other words, the instability is an event that will inevitably happen, as the stairs are used to carry heavy items like refrigerators, air conditioning compressors, boxes of tie-down straps, and the like, and are continuously exposed to being struck by vehicles driven by delivery persons.

The evidence of this case is academically similar to that in *J. Weingarten, Inc. v. Obiedio*, 515 S.W.2d 308 (Tex.Civ.App.— Houston [1st Dist.] 1974, writ ref'd n.r.e.). In *Obiedio*, Mrs. Obiedio was injured when she pulled on a "bascart" which "stuck together" with five or six other "bascarts," causing her to fall. *Id.* at 310. Evidence showed that Weingarten knew that the "bascart" would, from time to time, "stick together." Knowing this, Weingarten had a repair shop which repaired these "bascarts" to "avoid having the 'bascarts' stick together." ... *Id.* at 310–11.

In analyzing the facts of that case, the Houston Court of Appeals considered: 1) that Weingarten furnished the "bascarts" for customers convenience; 2) that Weingarten assumed exclusive responsibility for the maintenance and repair of the "bascarts"; 3) that Weingarten knew or should have known of the condition of the "bascarts" at the time of the occurrence. *Id.* at 311–12.

Summarizing our present case, appellants created the potentially dangerous condition, and in so doing knew the propensity of the steps for becoming unstable. Appellants knew that the steps were used daily by invitees carrying merchandise to and from appellants' warehouse. Appellants had two employees whose duty it was to monitor the stability of the steps by either repairing or replacing same. Appellants knew that on a daily or perhaps hourly basis, trucks would back up to the steps creating a potential for damage to same.

■ Applying the strict burden upon Mr. Daenen to produce evidence that appellants had actual or constructive knowledge that the steps were unstable at the time appellee stepped onto same would be unreasonable under these facts. We hold that the evidence is more than a scintilla that appellants had constructive knowledge that the steps in use carried an inherent propensity to become unstable at any time.[5] Appellants' point of error one is overruled and the judgment of the trial court is affirmed.

AFFIRMED.

■

---

5. Appearing in a footnote on p. 28 of appellants' brief is the apparent "argument and authority" for is allegation of factual insufficiency: Said footnote contains the following statement: "While the standards of review [no evidence vs. factual insufficiency] are concededly different, because both are evidentiary points of error the 'no evidence' arguments made in this brief are also applicable to the 'factual insufficiency' point." A factual sufficiency challenge will only be sustained if the appellate court determines that the finding of a vital fact is so contrary to the great weight and preponderance of the evidence that it is found to be clearly wrong and unjust. *Koch Oil Co. v. Wilber*, 895 S.W.2d 854, 861–62 (Tex.App.—Beaumont 1995, writ denied).

As we alluded to above, appellants' argument is not couched in terms of complete lack of any testimonial or physical evidence to support the actual or constructive knowledge element, but that what evidence appellee has presented has been held by the Texas Supreme Court as the legal equivalent of "no evidence" of knowledge. A request for a factual sufficiency review requires the appellant to properly discuss the evidence presented by *both* parties and then discuss why appellee's evidence is "so contrary to the great weight and preponderance" of appellant's evidence so as "to be clearly wrong and unjust." This appellants have not done. Consequently, the factual insufficiency issue is overruled. Tex. R.App. P. 38.1(h).